JOSÉ H. BELAVAL, en su carácter de Fiduciario, peticionario, v. TRIBUNAL DE EXPROPIACIONES DE PUERTO RICO, demandado.

Núm. 1809. *Sometido:* Febrero 1, 1950. *Resuelto:* Abril 25, 1950.

*E. T. Fiddler, José G. González* y *Tomás I. Nido,* abogados del peticionario; *Hon. Procurador General Vicente Géigel Polanco, J. B. Fernández Badillo, Procurador General Auxiliar* y *Baldomero Freyre, Fiscal del Distrito de San Juan,* abogados del interventor, demandante en el pleito principal.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

Al radicar demanda de expropiación forzosa para la adquisición de los terrenos que habrían de dedicarse al Aeropuerto Internacional, el Pueblo de Puerto Rico depositó en la Secretaría del Tribunal de Expropiaciones la cantidad de $32,956.79 como compensación justa y razonable del valor de una finca de veinte cuerdas que aparecía fideicomitida a nombre de José H. Belaval a virtud de un fideicomiso establecido por Gonzalo Aponte y su esposa para beneficio de sus hijos menores de edad Mary Marta, Gonzalo Mario y Rose Marie Aponte Otero.

José H. Belaval en su carácter de fiduciario solicitó la entrega de los fondos depositados, a lo que se allanó el Pueblo de Puerto Rico, pero el Tribunal de Expropiaciones la denegó dictando dos resoluciones, siendo el fundamento de la primera que estando establecido el fideicomiso a favor de unos menores, era necesario que se solicitara por el fiduciario la autori-

zación judicial previa con la intervención del fiscal de un tribunal con jurisdicción para ello que determinara la inversión a darse al dinero "para aquellas gestiones cubiertas por la escritura de fideicomiso que resulten ser convenientes para los menores beneficiarios del fondo en fideicomiso", y la segunda, que a pesar de que el fideicomiso se cónstituyó el 20 de diciembre de 1945 se establecieron ciertas cláusulas a favor de la concebida y no nacida Rose Marie Aponte Otero, la cual nació el día 7 de julio de 1946, estando ya en vigor la Ley núm. 303 de 12 de abril de 1946((1) pág. 783), que impone contribuciones sobre herencias y donaciones, la cual incluye dentro del término "donación" cualquier transferencia en fideicomiso, haciéndose necesario por tanto para proceder al retiro de los fondos, presentarle al Tribunal de Expropiaciones una certificación del Tesorero de Puerto Rico acreditativa del hecho de haberse pagado la contribución correspondiente.

Expedimos el auto en este caso para revisar estas resoluciones.

## I

¿Es necesaria la previa autorización judicial con intervención del fiscal en un caso de esta naturaleza? Creemos que no. En primer lugar veamos someramente la escritura de declaración de fideicomisos. En la misma comparecen Gonzalo Aponte y su esposa y José H. Belaval. Declaran los esposos Aponte ser padres de los menores Mary Marta y Gonzalo Mario Aponte y que además tienen concebido otro hijo; que son dueños de varias propiedades las cuales describen en la escritura, entre ellas la propiedad expropiada; que con el propósito de proveer para el bienestar de sus hijos menores y del concebido y no nacido y para que cada uno de ellos quede económicamente independiente, declaran constituídos tres fideicomisos irrevocables por un término que no excederá de 30 años de conformidad con la Ley núm. 41 de 23 de abril de 1928 (pág. 295), artículos 834 a 874 del Código Civil, ed. 1930, y que a ese efecto ceden y transfieren las pro-

piedades especificadas en dicha escritura a José H. Belaval, designado por ellos como fiduciario, sujeta dicha transferencia a que tanto las propiedades que se le traspasan como las que en el futuro se les pueda traspasar, constituirán separadamente y por partes iguales tres fondos en fideicomiso bajo la administración del fiduciario, al cual conceden entre otros poderes, los siguientes:

EL FIDUCIARIO queda expresamente autorizado a conservar los bienes fideicomitidos, pero sin embargo, queda plenamente facultado para invertir, reinvertir, vender, arrendar, traspasar y permutar por otros bienes o propiedad de cualquier clase, bajo aquellas transacciones, pactos y condiciones que crea adecuados, todos o parte de dichos bienes, así como permutar, si lo creyere conveniente, cualquier inversión e invertir y reinventir cualquier remanente o suma recibida en cualquier permuta o venta de cualesquiera obligaciones, créditos o valores u otra propiedad real o personal, corporal o incorporal, pública o privada, doméstica o extranjera, incluyendo acciones comunes o preferidas de corporaciones privadas o de servicio público o de cualquier propiedad no importa que ésta no produzca ingresos, ganancias o beneficio a la fecha de su adquisición.

"Queda además plenamente facultado para que, a su discreción y buen juicio, convierta de tiempo en tiempo, o cuando lo crea conveniente todo o parte del fondo en fideicomiso (TRUST FUND) en metálico. Queda ilimitadamente facultado para seleccionar aquellas inversiones y bienes que crea prudente adquirir para la conservación del fondo en fideicomiso (TRUST FUND)."

Hay otras cláusulas en la escritura las cuales tienen por objeto señalarle al fiduciario sus otras facultades, tales como distribución de ganancias, fiduciarios substitutos, no prestación de fianza, delegación de su poder de voto en cuanto a ciertas acciones de corporaciones, etc. y por último la creación de tres fideicomisos independientes para cada uno de los tres hijos.

El día 12 de septiembre de 1946 y a virtud de la escritura núm. 167 otorgada ante el notario Diego Guerrero Noble titulada Acta comparecieron los esposos Aponte y José H.

Belaval manifestando los primeros que mediante la escritura núm. 217 otorgada ante el mismo fedatario sobre declaración de fideicomisos habían constituído tres fideicomisos irrevocables, separados e independientes, haciendo constar en la mencionada escritura núm. 217 que el fideicomiso número tres correspondería a un hijo que para la fecha del otorgamiento de aquélla—20 de diciembre de 1945—estaba concebido pero no nacido; que éste había nacido el día 7 de julio de 1946, siendo una niña que para aquél entonces y en el evento de que fuera una niña se le conocería con el nombre de Manuela Aponte Otero pero que ahora llevaría el nombre de Rose Marie Aponte Otero. Acto seguido hicieron constar "que el fideicomiso número tres constituído por ellos a favor de 'hijo no nacido' según la escritura número doscientos diez y siete sobre Declaración de Fideicomisos otorgada en veinte de diciembre de mil novecientos cuarenta y cinco ante este fedatario ha quedado desde dicha fecha sustituído a favor de su hija Rose Marie Aponte Otero para todos los efectos y consecuencias de Ley". Tanto la escritura núm. 217 como el acta aclaratoria fueron inscritas en el Registro de la Propiedad.

Los motivos que expuso el tribunal inferior para denegar la entrega al fiduciario del dinero consignado por El Pueblo de Puerto Rico en este caso son los siguientes:

"La entrega del dinero consignado por El Pueblo de Puerto Rico al fiduciario constituye la consumación parcial en cuanto al precio envuelto, de la enajenación forzosa que comprende este procedimiento de expropiación. Enajenar es pasar o trasmitir a otro el dominio de una cosa o algún derecho sobre ella. El interés que los menores beneficiarios tenían en el bien inmueble objeto del fideicomiso, por la expropiación ha pasado a ser consecuentemente un interés en parte del dinero proveniente de la expropiación del bien inmueble sujeto a fideicomiso. No basta el solo asentimiento de el padre con patria potestad, a nombre de sus menores hijos, para consentir a la entrega del dinero solicitado, pues tratándose, como en efecto cree este Tribunal que se trata, de la entrega de un dinero sobre el cual tienen derecho e interés los menores demandados, nos parece de clara aplicación los preceptos de ley comprendidos en los artículos 614

y siguientes del Código de Enjuiciamiento Civil de Puerto Rico tal como aparecen en la compilación de 1941 en las páginas 809 y 810."

Expuso además que de acuerdo con los artículos 834 al 874 del Código Civil, ed. 1930, sobre constitución de fideicomisos,(¹) no se desprende "que el fiduciario esté dispensado en toda ocasión y momento de la supervisión de la Corte de Distrito, respecto de los bienes y derechos de los menores fideicomisarios", y como consecuencia resolvió que el fiduciario debía solicitar del tribunal inferior o de otro con jurisdicción y competencia para ello, la autorización judicial correspondiente, con notificación al fiscal, para que el dinero le sea entregado, como dijimos antes, "para aquellas gestiones cubiertas por la escritura de fideicomiso que resulten ser convenientes para los menores beneficiarios del fondo en fideicomiso".

Esta resolución está en pugna abierta con el concepto básico de la institución sobre fideicomiso traída a Puerto Rico por la Ley de 1928, que es una adaptación de la que se había hecho en Panamá en el año 1925 siguiendo el sistema anglosajón de "trusts".(²) De acuerdo con el artículo 834 del Código Civil, ed. 1930, "El fideicomiso es un mandato irrevocable a virtud del cual se trasmiten determinados bienes a una persona, llamada fiduciario, para que disponga de ellos

---

(¹) Estos artículos fueron incorporados al Código Civil de 1930 tomándolos *verbatim* del articulado de la Ley núm. 41 de 23 de abril de 1928 para proveer la constitución de fideicomisos y a ellos nos referimos en adelante más bien que al articulado de dicha Ley.

(²) Véanse *The Problems of Trust Legislation in Civil Law Jurisdictions: The Law of Trusts in Puerto Rico*, por Luis F. Sánchez Vilella, 19 Tulane Law Review 374; *Trust Systems in the Western Hemisphere*, por Ruford G. Patton, 19 Tulane Law Review 398; El Futuro de la Legislación de Fideicomiso, pór Ruford G. Patton, 17 Revista Jurídica de la Universidad de Puerto Rico 221. Se demuestra en estos ensayos que fué el Dr. Ricardo J. Alfaro de Panamá quien redactó el proyecto que luego se convirtió en la Ley núm. 9 de 1925 creando el fideicomiso en dicha república y que el Lic. Miguel Guerra Mondragón, siendo Vicepresidente de nuestra Cámara de Representantes, fué el autor del proyecto que luego se convirtió en la Ley núm. 41 de 1928, supra, y la cual con algunas modificaciones, fué tomada de la Ley de Panamá.

conforme lo ordene la que los trasmite, llamada fideicomitente, a beneficio de este mismo o de un tercero llamado fideicomisario."

El artículo 849 del mismo código dispone que:

"La vida legal de un fideicomiso comienza desde que el fiduciario acepta el mandato, con lo cual se hace irrevocable. La aceptación puede ser expresa o tácita, basada esta última en los actos del fiduciario para llevar adelante el fideicomiso."

Y los artículos 864, 865, 866 y 867 dicen así:

"Artículo 864.—El fiduciario no estará obligado a prestar fianza para la buena administración sino por decreto que, como medida de precaución, libre un tribunal con jurisdicción competente, a solicitud del fiscal, del fideicomitente, del fideicomisario o de los ascendientes legítimos de este último, cuando no haya nacido y se espere su nacimiento; *Disponiéndose,* que será propio cargar a los fondos o bienes fideicomitidos los gastos de dicha fianza.

"Artículo 865.—El fiduciario tendrá todos los derechos y acciones correspondientes al pleno dominio; pero no podrá enajenar o gravar los bienes fideicomitidos a menos que para ello tenga autorización expresa o a menos que, sin enajenarlos o gravarlos, sea imposible la ejecución del fideicomiso.

"Artículo 866.—El fiduciario no dispondrá de los bienes fideicomitidos en forma contraria o distinta a la establecida en el fideicomiso.

"Artículo 867.—Por orden del tribunal con jurisdicción competente se destituirá de su cargo al fiduciario:

"1. Si sus intereses personales son incompatibles con los del fideicomisario;

"2. Si malversa o fraudulenta o negligentemente administra los bienes fideicomitidos;

"3. Si se incapacita o inhabilita.

"La destitución del fiduciario puede solicitarse por el fideicomitente, por el fideicomisario o por el fiscal, este último en defensa de menores de edad o de personas incapacitadas para administrar sus bienes, o a nombre de la ley o de la moral pública."

De acuerdo con estas disposiciones, resalta el error en que incurrió el tribunal inferior al sostener que para la inversión de los bienes en fideicomiso de que se trata, deben aplicarse los artículos 614 y siguientes del Código de Enjuiciamiento Civil, que son aquéllos que se refieren al procedimiento a seguirse en aquellos casos en que, según el Código Civil, necesitan los padres o tutores de menores o incapacitados, autorización judicial para actos o contratos que se refieren a la guarda de dichos menores o incapacitados y de sus bienes.(³) En estos casos se trata de bienes pertenecientes al menor o incapacitado. En el del fideicomiso, los bienes que pertenecían al fideicomitente han sido trasmitidos al fiduciario, quien tiene todos los derechos y acciones correspondientes al *pleno dominio*, con la única limitación de que el traspaso se hace de acuerdo con lo que haya ordenado el fideicomitente, para beneficio del fideicomisario. El artículo 865, supra, expresamente dice que el fiduciario "no podrá enajenar o gravar los bienes fideicomitidos a menos que para ello tenga autorización expresa o a menos que, sin enajenarlos o gravarlos, sea imposible la ejecución del fideicomiso". Y en el presente caso ya hemos visto la amplia concesión de poderes que hicieron los fideicomitentes al fiduciario Belaval para vender, gravar e invertir los bienes del fideicomiso. El hecho de que se haya expropiado una finca del fideicomiso no implica que el valor razonable de dicha propiedad, una vez consignado en la corte, haya sido excluído del *corpus* del fideicomiso en tal forma que el fiduciario esté obligado a solicitar autorización judicial previa para poder invertir dicha suma de dinero. El título sobre las propiedades traspasadas en fideicomiso está en el fiduciario y así inscrito en el Registro de la Propiedad sujeto a las condiciones del fideicomiso, y no en los menores beneficiarios en este caso. Estos sólo tienen el derecho a recibir

---

(³) Esos casos son los provistos en los artículos 159 y 212 del Código Civil, ed. 1930, sobre prohibición de enajenar o gravar bienes inmuebles de clase alguna; o bienes muebles cuyo valor exceda de quinientos o doscientos dólares, respectivamente, sin previa autorización judicial.

dichas propiedades en el futuro al cumplirse con los términos del fideicomiso. (⁴) Tratando sobre la situación aquí envuelta, se dice en 1 Nichols *On Eminent Domain* 344: "En el caso de un fideicomiso expreso, sin embargo, es el fiduciario el que tiene el título legal y no el beneficiario a quien se reconoce como dueño en procedimientos sobre expropiación forzosa y a quien se concede la compensación pues ésta, en tal caso, sustituye a la finca y se retiene sujeta a los términos del fideicomiso."

La parte realmente interesada en obtener el dinero consignado en el procedimiento de expropiación forzosa no la constituyen los menores sino el fiduciario, pues a él correspondería iniciar cualquier acción que, como consecuencia de dicho procedimiento, pudiera surgir. 2 Scott *On Trusts*, sección 281, pág. 1565.

Si como hemos dicho el título actual en la propiedad corresponde al fiduciario—teniendo los menores sólo un interés equitativo—y si el fiduciario está obligado por los términos del contrato que expresamente aceptó, no siendo responsable bajo el artículo 862 del Código Civil, "de ninguna equivocación de criterio, de ningún error de hecho o de derecho, ni de ningún acto u omisión, a excepción de su propio descuido voluntario o negligencia manifiesta", y si sus facultades y deberes están especificados en la escritura de constitución de fideicomiso, el fiscal no tiene intervención alguna en situación como la que presenta el caso de autos, que se refiere únicamente a la entrega al fiduciario de un dinero que forma parte de los bienes traspasados en fideicomiso. Ya la ley especifica aquellas situaciones en que el fiscal y la corte pueden intervenir, a saber, aquéllas especificadas en los artículos 860, 864 y 867, supra. Y es que las cortes son reacias

---

(⁴) El artículo 868 del Código Civil dispone:

"Será deber del fiduciario, al extinguirse el fideicomiso, disponer de todos los bienes fideicomitidos que queden en su poder o posesión, mediante la enajenación correspondiente, con arreglo a los términos del documento en que conste el fideicomiso, del contrato o del decreto de tribunal con jurisdicción competente por virtud de los cuales se extingue el fideicomiso."

a intervenir en casos de fideicomisos a menos que, tratándose de menores o incapacitados, los bienes que constituyan el *corpus* fideicomitido corran grave e inminente peligro de ser dilapidados por el fiduciario o que éste en sus actuaciones exceda los límites de la discreción que le ha sido concedida o que actúe de mala fe.  2 Scott, ob. cit., sec. 187, pág. 986. Ninguna de estas circunstancias ha surgido en este caso ni correspondería al Tribunal de Expropiaciones intervenir en las mismas si hubieran surgido.  Como se dice en la última cita de Scott:

"Bajo los términos del fideicomiso puede dejarse a la discreción del fiduciario si debe o no ejercitar un poder, o cuando se le ordena ejercitar el poder, el momento y manera de su ejercicio puede dejarse a su discreción.  Hasta el extremo en que el fiduciario tiene discreción, la corte no controlará su ejercicio siempre que él no exceda los límites de la discreción concedídale. La corte no sustituirá su propio juicio por el suyo."

En 1 *Restatement of the Law of Trusts*, sec. 187, pág. 479, se expone la regla en esta forma:  "Cuando se concede discreción al fiduciario con respecto al ejercicio de un poder, su ejercicio no está sujeto al control de la corte, excepto para evitar un abuso de discreción por parte del fiduciario."  Y en el comentario ( *c* ) a dicha regla, se dice:  "Así, es aplicable no sólo a los poderes para arrendar, vender o hipotecar la propiedad fideicomitida o *para invertir* fondos del fideicomiso, sino también a los poderes para asignar el interés beneficiario entre varios beneficiarios, determinar la suma necesaria para el sostenimiento de un beneficiario o para terminar el fideicomiso."

Erró, por tanto, el tribunal inferior al querer sujetar los fondos consignados en el procedimiento de expropiación forzosa al procedimiento sobre utilidad y necesidad en relación con la enajenación o gravamen de bienes de menores o incapacitados provisto en los artículos 614 y siguientes del Código de Enjuiciamiento Civil en relación con los artículos 159 y 212 del Código Civil.

## II

■■■ La segunda resolución del tribunal inferior determinó que siendo uno de los beneficiarios del fideicomiso establecido en 20 de diciembre de 1945, un hijo de los fideicomitentes, concebido pero no nacido en dicha fecha, pero que nació el 7 de julio de 1946, estando ya en vigor la Ley núm. 303 de 12 de abril de 1946 que impone contribuciones sobre herencias y donaciones, incluyéndose dentro del término "donación" cualquier transferencia en fideicomiso, era necesario presentarle a dicho tribunal una certificación del Tesorero de Puerto Rico acreditativa de haberse pagado la contribución correspondiente antes de poderse retirar por el fiduciario los fondos consignados en el procedimiento de expropiación forzosa.

En efecto la sección 1 de la Ley núm. 303 de 1946 dispone, en parte, que: "Donación incluye también cualquier transferencia en fideicomiso (*trust*)." Empero, ¿cuándo se hizo la "transferencia" de las propiedades objeto del fideicomiso en el presente caso al fiduciario? No hay duda de que fué el 20 de diciembre de 1945, o sea antes de estar en vigor la Ley núm. 303. El artículo 845 del Código Civil expresamente autoriza la constitución de un fideicomiso a favor de los "hijos futuros del fideicomitente". El hecho de que la hija Rose Marie naciera ya estando en vigor la Ley núm. 303, ¿implica que la transferencia al fiduciario de la tercera parte del fideicomiso a ella asignada no ocurrió al constituirse el fideicomiso? Creemos que no. Es de recordar que en la escritura de fideicomiso se hizo constar que "en el desgraciado caso de que se malograse el nacimiento del beneficiario no nato, entonces el *corpus* de su FIDEICOMISO, conjuntamente con las ganancias acumuladas, pasarán inmediatamente a los demás FIDEICOMISOS (sic) por partes iguales." De manera que, naciera o no el hijo concebido, el fideicomiso quedó establecido desde que se otorgó la escritura en 1945. Al fiduciario se traspasaron todas las propiedades objeto del fideicomiso. Así, por ejemplo, los ingresos que hubiera tenido esa

tercera parte de las propiedades con motivo del traspaso y constitución del fideicomiso estaban sujetos al pago de la contribución sobre ingresos a virtud de la sección 20 (*a*) (1) de la Ley sobre la materia (⁵) y el apartado (*b*) de la misma sección impone el deber de hacer el pago al fiduciario. Cualquier ingreso que hubiera tenido el *corpus* total del fideicomiso estaba sujeto al pago de la contribución correspondiente.

Si el fideicomiso quedó constituído en diciembre de 1945 y en dicha fecha se traspasaron las propiedades al fiduciario, si bien en cuanto a la tercera parte de dichas propiedades correspondiente al fideicomiso del hijo concebido y no nacido, éste, antes de nacer, no podía tener el título equitativo o interés beneficioso (*beneficial interest*) que corresponde a todo beneficiario, somos de opinión que, siendo los otros dos hijos de los fideicomitentes los futuros beneficiarios del fideicomiso creado a favor del hijo no nacido, en caso de que éste no naciera, se creó un fideicomiso resultante (*resulting trust*) a favor de los dos hijos ya nacidos, teniendo ellos el título equitativo hasta que nació la hija Rose Marie. En estos casos imperan los términos en que está redactado el instrumento en que se crea el fideicomiso. En 1 Scott *On Trusts*, sec. 112.1, págs. 581, 582, se dice:

"Cuando la propiedad se transfiere en fideicomiso a favor de un hijo no nacido, depende de los términos del fideicomiso quién tiene el interés beneficioso (*beneficial interest*) hasta que nazca el hijo. Puede que se haya provisto que los ingresos sean acumulados hasta que el niño haya nacido, o puede proveerse que el fiduciario tenga derecho al interés beneficioso hasta que nazca o que el fideicomitente tenga derecho a dicho interés. En ausencia de alguna de estas disposiciones, bien en palabras expresas o

---

(⁵) Dicha sección dispone lo siguiente:

"Sección 20.—(*a*) La contribución impuesta por las partes I y II de este título se aplicará al ingreso de sucesiones o de cualquier clase de propiedad en fideicomiso, incluyendo—

"(1) Ingreso acumulado en fideicomiso a beneficio de personas *no nacidas o no determinadas*, o personas con intereses indefinidos, e ingreso acumulado o retenido para distribución futura a virtud de los términos del testamento o manda." (Bastardillas nuestras.)

en otra forma, la inferencia es que el fiduciario retiene a virtud de un fideicomiso resultante a favor del fideicomitente."

El presente caso se distingue de las situaciones expuestas, (1) porque aquí el fideicomiso se constituyó para dos hijos nacidos y uno por nacer, (2) porque la escritura expresa claramente la intención de los fideicomitentes de que el fideicomiso del no nacido revertiría a los otros dos hijos en su totalidad. No fué la intención, por tanto, que el título equitativo del mismo correspondiera a los fideicomitentes hasta la fecha en que naciera el tercer hijo, sino más bien a los dos ya nacidos.

El poder de designar como beneficiario a un hijo no nacido es disposición corriente en las leyes sobre fideicomiso y si en algo se diferencia la nuestra es en que lo limita a hijos futuros del fideicomitente.([6]) En 1 *Restatement of the Law of Trusts*, sec. 112, comentario (*d*), pág. 290, se expone la regla predominante en Estados Unidos así:

"*Hijos no nacidos.* Un hijo que no ha nacido o sido concebido al momento de crearse un fideicomiso puede ser un beneficiario del fideicomiso. Si el interés ha de adquirirse por el hijo dentro de la regla contra las perpetuidades, el fideicomiso es válido si los demás requisitos para la creación se cumplen."

El hecho de que en estos casos el disfrute del interés beneficioso se posponga hasta que nazca el hijo no afecta la validez y constitución del fideicomiso cuando, como en el presente caso, se ha manifestado en la escritura cuál fué la intención de los fideicomitentes de traspasar dicho interés a los otros dos hijos como beneficiarios.([7]) El fideicomiso queda constituído desde el momento en que se otorga la escritura aun cuando el beneficiario sea un hijo no nacido, bajo la teoría de que ". . . crea un fideicomiso resultante inmediato a favor del fideicomitente, el cual cesa cuando nazca el hijo, y que

---

([6]) Sánchez Vilella, ob. cit., pág. 393, sugiere que nuestra Ley debe enmendarse para conformarla con la sección 112, comentario (*d*) de *Restatement of Trusts*.

([7]) 1 *Restatement, Trusts*, sec. 26, comentario (*g*), pág. 83.

surge un fideicomiso expreso a favor del hijo cuando éste nace." *Morsman* v. *Commissioner of Internal Revenue*, 90 F.2d 18, 24 (C.C.A. 8, 1937), *certiorari* denegado en 302 U.S. 701, citando a Bogert, *Trusts and Trustees*, sec. 163. [8] El caso de *Morsman* fué uno en que un hombre soltero creó en el año 1929 un fideicomiso nombrándose a sí mismo fiduciario y disponiendo que él mismo sería el beneficiario mientras viviera y a su muerte los beneficiarios serían su viuda, hijos o herederos, y que una institución bancaria sería el fiduciario después del 1ro. de enero de 1939. Morsman realizó ciertas transacciones con acciones que formaban parte de la propiedad fideicomitida antes de traspasar ésta al banco en mayo 3 de 1929. Se impuso a Morsman individualmente la contribución correspondiente a los beneficios obtenidos en dichas transacciones y no al fiduciario, sosteniéndose la actuación del Comisionado de Rentas Internas tanto por la Junta de Apelación de Contribuciones como por la corte, bajo la teoría de que no se había creado un fideicomiso por el hecho de que tanto el fiduciario original, Morsman, como el beneficiario eran la misma persona, diciéndose a las págs. 23–24: "... es cosa resuelta que un fideicomiso no puede existir cuando la misma persona posee tanto el título legal como el equitativo en la propiedad fideicomitida en el mismo momento. En tal caso los dos títulos se consolidan. (Citas)..." Se arguyó que como se habían designado como beneficiarios futuros a la viuda, hijos o herederos del fideicomitente, el fideicomiso había quedado perfeccionado desde un principio. La corte rechazó esta contención y después de hacer la cita de Bogert, supra, dijo:

"... En tal caso, cuando el fiduciario es una tercera persona, si no nace el hijo dentro del período de la regla contra perpetuidades, los intereses legal y equitativo se consolidan en el fideicomitente al vencer el período; pero, si el fideicomitente es también el fiduciario, los dos intereses no son separados a virtud de la propuesta declaración de fideicomiso. La ley sobre fideicomiso

---

[8] Véase 51 Harv. L. Rev. 176; 38 Columbia L. Rev. 195.

sobre este punto parece clara. El fideicomiso resultante inmediato a favor del fideicomitente es sólo una aplicación específica de la regla general que reconoce la existencia de un fideicomiso resultante a favor del fideicomitente en casos en que el título legal no está en una persona que no se intenta que tenga el interés beneficioso *y este interés no ha sido en otra forma efectivamente asignado* (*disposed of*). (Citas.) Así, si A, un soltero, transfiere propiedades a B en fideicomiso para acumular las rentas y beneficios y traspasarlos al hijo mayor de A cuando éste cumpla su mayoridad (*Trust, Restatement,* sec. 112, ejemplo 6) *un fideicomiso surge inmediatamente*—pues B tiene la propiedad como fiduciario resultante para A surgiendo el fideicomiso expreso cuando y si el hijo mayor llega a existir—cesando entonces el fideicomiso resultante. Pero en ese caso si A, un soltero, o cualquier persona sin hijos, se declara a sí mismo fiduciario de propiedad para su hijo mayor, en términos iguales o similares, *no surge ningún fideicomiso al presente.* El fideicomiso expreso para el hijo no puede surgir hasta que el hijo nazca y A no puede tener la propiedad en un fideicomiso resultante para sí mismo durante su vida debido a la necesaria consolidación en tal caso de los intereses legales y equitativos en la misma persona. Si A muere sin hijos bajo estas circunstancias, la propiedad que constituía el llamado fideicomiso es tan parte de su herencia como si no hubiera hecho la declaración de fideicomiso. La distinción así anotada entre el caso en que A se declara a sí mismo fiduciario de su hijo no nacido y cuando traspasa la propiedad a B en fideicomiso para su hijo, *es vital,* y este es el punto en que Morsman fracasó en su intento de crear un fideicomiso en el presente. . . . Hay, así, limitaciones a la muy citada regla de que *un fideicomiso en el presente puede surgir aun cuando el beneficiario expreso no ha nacido.* La aplicación a dicha regla a todo caso en que el supuesto beneficiario no ha nacido hace caso omiso 'de los peligros que están latentes en una "jurisprudencia de concepciones" '. *Schubert* v. *August Schubert Wagon Co.,* 249 N.Y. 253, 164 N.E. 42; 64 A.L.R. 293. . . .(⁹)

"Se ha dicho que 'Si un beneficiario de un fideicomiso no ha nacido o sido concebido, un pleito puede sostenerse a su favor

---

(⁹) La frase "jurisprudencia de concepciones" fué citada por el Juez Cardozo originalmente en el caso de *Hynes* v. *New York Cent. R. Co.,* 231 N.Y. 229, 131 N.E. 898, 900, tomándola del ensayo *Mechanical Jurisprudence* por Roscoe Pound, 8 Columbia L. Rev. 605, 610.

por un defensor o tutor con el fin de poner en vigor un fideicomiso.' *Trusts, Restatement,* sec. 214, comentario (*a*). La regla es ilustrada por casos donde otros miembros de la clase a que pertenece el hijo no nacido ya existen, *Trusts, Restatement,* sec. 120, o cuando el dueño ha traspasado la propiedad a una tercera persona para retenerla para tal hijo, *Trusts, Restatement,* sec. 112, comentario (*d*). Estos casos son situaciones en que ocurre por otras razones una separación de los títulos legal y equitativo haciendo surgir independientemente de cualesquiera derechos asumidos de hijos no nacidos, a un fideicomiso y así concediendo a las cortes de equidad, que tradicionalmente ejercen control sobre fideicomisos, jurisdicción desde el principio, y habiéndola adquirido la corte la retiene para proteger los derechos que puedan surgir más tarde, *Trusts, Restatement,* sec. 340, comentario (*d*). En otras palabras, la regla precedente se aplica donde, aparte de nombrarse al hijo no nacido, hay una explicación racional de un fideicomiso en el presente. . . ." (Bastardillas nuestras.)

Hemos citado con alguna extensión de la opinión en el caso de *Morsman* porque expone, con claridad y citas de autoridades, las reglas aplicables a distintas situaciones en que el beneficiario de un fideicomiso es un hijo no nacido del fideicomitente. Dichas reglas, aplicadas al caso de autos, sostienen nuestra conclusión de que el fideicomiso a favor del hijo concebido y no nacido bajo los términos de la escritura otorgada por los fideicomitentes quedó creado desde la fecha de su otorgamiento en diciembre del año 1945, que en dicha fecha ocurrió el evento tributable, o sea con anterioridad a la vigencia de la Ley núm. 303, supra.

La contención del interventor es contraria a la regla aplicable. La vida legal del fideicomiso comienza desde que el fiduciario acepta el mandato, con lo cual se hace irrevocable. Artículo 849, supra. Y el fiduciario en este caso aceptó el mandato en la misma escritura en que se constituyó el fideicomiso en diciembre de 1945 desde cuya fecha le fueron traspasados los bienes. La "transferencia en fideicomiso" constituye el evento tributable a los efectos de la donación según se define por la sección 1 de la Ley núm. 303, supra, y eso ocurrió, como hemos dicho, antes de estar en vigor dicha Ley.

Como antes dijimos, el dinero consignado en el procedimiento de expropiación forzosa sustituye a la propiedad expropiada. No puede considerarse tampoco que dicho dinero se está transfiriendo ahora al fiduciario para hacerlo caer dentro del alcance de la Ley núm. 303.

*Deben revocarse las resoluciones dictadas por el tribunal inferior y ordenarse la entrega del dinero consignado al fiduciario Jose H. Belaval.*