Sol Luis Descartes, etc., peticionario, *v.* Tribunal de Contribuciones de Puerto Rico, demandado; Ramón Arbona Frontera, interventor.

Núm. 274.—*Sometido:* Mayo 1, 1952. *Resuelto:* Mayo 6, 1952.

*Hon. Procurador General Víctor Gutiérrez Franqui y Manuel J. Medina Aymat, Procurador General Auxiliar,* abogados del peticionario; *J. J. Ortiz Alibrán y Óscar Souffront,* abogados del interventor, querellante en el pleito principal.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La cuestión envuelta en este caso es si Ramón Arbona Frontera tiene derecho a reclamar en sus planillas de contribuciones sobre ingresos correspondientes a los años 1944 y 1945 ciertas deducciones por concepto de donativos héchosle a la Iglesia Católica. El Tesorero notificó al contribuyente de ciertas deficiencias para dichos años en la teoría de que los donativos no se efectuaron en 1944 y 1945. Celebrado el juicio en los méritos, el Tribunal de Contribuciones no estuvo de

acuerdo con el Tesorero y dictó sentencia a favor del contribu-
yente.   Expedimos el auto de *certiorari* para revisar la deci-
sión del Tribunal de Contribuciones.

No existe controversia en cuanto a los hechos.   En 1944
el Obispo de Ponce solicitó del contribuyente un donativo para
un orfanato que habría de establecerse en Mayagüez.   En
1944 Arbona depositó $6,000 en una cuenta especial a nombre
de "Ramón Arbona, Miguel Frontera, Antonio Frontera or
any of them in trust".   Entonces informó al Obispo de Ponce
que la referida cantidad estaba a disposición suya.   Dicha
suma fué depositada según se ha dicho con el fin de que en
cualquier momento pudiera expedirse un cheque a favor de la
Iglesia, en caso de que una o más de las personas mencionadas
estuviera ausente de Puerto Rico cuando la Iglesia solicitase
el dinero.   En 1945 se hizo un depósito adicional de $4,000
a la misma cuenta con idéntico propósito.

En 1947, a solicitud de la Iglesia, Antonio Frontera expi-
dió un cheque de $10,000 contra dicha cuenta a favor del
Obispo de Ponce.   Este cheque decía que se expedía como "Do-
nativo con destino a su Instituto Educativo y Religioso Casa
Manresa".   El banco pagó el dinero a la Iglesia en 1947 y
cerró la cuenta.   La suma de $10,000 permaneció intacta en la
cuenta especial hasta que fué retirada según se ha dicho.   El
dinero permaneció en la referida cuenta hasta el 1947 porque
el orfanato nunca se construyó.   Se expidió el cheque en 1947
cuando la Iglesia decidió usar el dinero para otra obra edu-
cativa.

■■■ La sección 16 (*a*) (10) de la Ley de Contribuciones
sobre Ingresos dispone que al computar su ingreso neto un in-
dividuo puede deducir ciertos donativos caritativos "hechos
dentro del año contributivo".([1])   El Tribunal de Contribu-
ciones admite que una oferta o aun una promesa obligatoria
de hacer un donativo caritativo no es suficiente para justificar

---

([1]) Ley núm. 74, Leyes de Puerto Rico, 1925 (pág. 401), según enmen-
dada por la Ley núm. 31, Leyes de Puerto Rico, 1941 ((1) pág. 479).   Y
véase la Ley núm. 10, Leyes de Puerto Rico, 1947 ((1) pág. 23).

la deducción. La regla es, según lo admite el Tribunal de Contribuciones, que se permite la deducción solamente en el año en que el donativo de hecho es pagado. 5 Mertens, *Law of Federal Income Taxation*, pág. 495, y casos citados.

Sin embargo, de acuerdo con el Tribunal de Contribuciones, "El demandante en 1944 y 1945 fué algo más lejos que el prometer o hacer el compromiso de hacer una donación para la Iglesia Católica. Como cuestión de realidad se desprendió de las cantidades donadas, de su uso y de su beneficio, depositándolas en una cuenta en fideicomiso a disposición de la donataria. Si ésta no usó el donativo de inmediato o por lo menos dentro del mismo año contributivo, fué por razones suyas, pero la situación no hubiera sido sustancialmente distinta, si el demandante hubiera entregado en 1944 y 1945 directamente los cheques de $6,000 y $4,000 respectivamente al Obispo y éste inmediatamente los hubiera depositado en el fondo en fideicomiso hasta que llegara el momento de darles el uso para el cual se donaron."

No estamos conformes con el razonamiento del Tribunal de Contribuciones. Este depósito no creó un fideicomiso propiamente dicho del dinero depositado a favor de la Iglesia. *Cf.* artículo 836 del Código Civil, ed. de 1930; *Belaval* v. *Tribl. de Expropiaciones*, 71 D.P.R. 265. En verdad, el contribuyente no alega lo contrario aquí. En su testimonio admite que muy bien pudo haber retirado este dinero de la cuenta para algún otro propósito; solamente manifestó que "moralmente no podía".

La cuestión de que el dinero fué pagado de hecho a la Iglesia no afecta nuestro problema. Esto indudablemente autorizaría al contribuyente a reclamar una deducción para el año 1947, cuando se pagó el dinero a la Iglesia. Pero en este caso no se expidió cheque alguno hasta el 1947. Y con anterioridad a ese año no se creó ningún fideicomiso o método otro alguno mediante el cual el dinero fué irrèvocablemente puesto fuera del control del contribuyente para el beneficio de la donataria. Aun cuando como ocurre aquí el contribuyente pone el dinero

en una cuenta especial y lo separa para la donataria, esto no constituye el pagò, mientras todavía retenga el control del dinero y pueda legalmente dedicarlo a algún otro fin suyo. Por consiguiente, no podemos resolver que el contribuyente pagó los $10,000 a la Iglesia en 1944 y 1945. 5 Mertens, supra, pág. 495; *Estate of Modie J. Spiegel*, 12 T. C. 524 (1949), y casos allí citados.

*La sentencia del Tribunal de Contribuciones será revocada y se dictará una nueva declarando sin lugar la querella en cuanto al asunto aquí envuelto.*