EDNA D. FREEMAN, demandante y recurrente, *v.* JOSÉ RAMÓN NOGUERA, SECRETARIO DE HACIENDA, demandado y recurrido.

Número 135.

*Reasignado:* 6 de febrero de 1961. *Resuelto:* 24 de marzo de 1961.

---

*Brown, Newsom & Córdova,* abogados de la recurrente; *Hon. Secretario de Justicia, Hiram R. Cancio, Arturo Estrella, Secretario de Justicia Auxiliar y Luis F. Candal, Procurador Auxiliar,* abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

George D. Freeman, ciudadano de y residente en el estado de Michigan, era dueño de 1,360 acciones comunes, clase A, de la corporación Frederick Lee, Inc., una corporación organizada y existente de acuerdo con las leyes del Estado Libre Asociado de Puerto Rico, con oficinas principales en Mayagüez. A su fallecimiento, ocurrido en 29 de marzo de 1953, estas acciones fueron transferidas a su viuda doña Edna D. Freeman, domiciliada en y residente de la ciudad de Sturgis, Michigan, y ciudadana de dicho estado. Todos los bienes de la herencia—entre los cuales se encuentran dichas acciones—estaban localizados físicamente fuera de Puerto Rico. Oportunamente la recurrente radicó las correspondientes declaraciones al Gobierno de Estados Unidos y al Gobierno del Estado de Michigan para la liquidación de contribuciones con motivo de la transferencia de los bienes del caudal, y pagó por este concepto las cantidades de $12,567.06 y $5,840.82.

En 11 de octubre de 1957, el Secretario de Hacienda requirió a la recurrente el pago de determinada suma por concepto de contribución y penalidad bajo las disposiciones de la Ley Núm. 303 de 12 de abril de 1946 (Leyes, pág. 783, 13 L.P.R.A. secs. 881 y sigtes.), conocida comúnmente como la Ley de Contribución sobre Herencia, en relación con la transferencia de las acciones de la corporación local. Des-

pués de celebrada una vista administrativa, se determinó que el valor en el mercado de las acciones a la fecha del fallecimiento del causante era de $112,200; se le concedieron los créditos correspondientes por las contribuciones pagadas a los gobiernos de Estados Unidos y Michigan, se requirió el pago de una contribución de $22,432.66 y se fijó una penalidad de $1,121.63 por no haberse rendido oportunamente la declaración según requerido por el artículo 5 de la Ley Núm. 99 de 29 de agosto de 1925 (Leyes, pág. 791, 13 L.P.R.A. sec. 893). No conforme con esta resolución administrativa, la recurrente acudió al Tribunal Superior, Sala de San Juan, que declaró sin lugar la demanda. Contra esta sentencia interpuso recurso de revisión y expedimos el auto.

La cuestión principal que se presenta es si en la forma en que está redactada la Ley Núm. 303 de 12 de abril de 1946, el Secretario de Hacienda está facultado para imponer una contribución sobre la transferencia por herencia de acciones de una corporación doméstica, con oficinas principales en Puerto Rico, cuando tanto el causante como la heredera son domiciliados, residentes y ciudadanos de un estado de la Unión, y los certificados de acciones se encuentran físicamente a la fecha del fallecimiento en dicho estado. Al efecto sostiene la recurrente que la ley no hace *referencia específica* a "no residentes" ni a "bienes intangibles" y que tampoco tiene disposición alguna "que dé alguna indicación de que el legislador tuvo en mente hacer extensiva esta contribución a propiedades intangibles de no-residentes que no estuvieren físicamente localizadas en Puerto Rico". (1)

La contribución sobre bienes transmitidos por herencia hizo su aparición en la estructura contributiva local

---

(1) En la demanda presentada, la recurrente impugnó la facultad del Secretario para hacer la imposición de la contribución a base de que ello violaba determinadas disposiciones de las constituciones de Estados Unidos y el Estado Libre. Posteriormente, en el memorándum presentado en el tribunal recurrido, desistió de este reparo y aceptó expresamente que nuestra Asamblea Legislativa puede imponer una contribución por la transferencia de bienes intangibles de no-residentes. La cuestión quedó limitada a si nuestra ley sobre la materia cubre esta situación.

con el cambio de soberanía. En 31 de enero de 1901 (Leyes, pág. 48, Estatutos Revisados, 1902, arts. 368–381) se adoptaron las primeras disposiciones sobre la materia y se impuso una contribución cuando por testamento o abintestato, o por herencia o donación cuya intención fuere otorgar la posesión o el usufructo después del *fallecimiento* se transmitieren *a*) bienes inmuebles sitos en Puerto Rico, pertenecientes o no a habitantes de la Isla; y, *b*) bienes muebles pertenecientes a habitantes de Puerto Rico. Se trataba de una contribución de herencia típica que recaía directamente sobre los bienes y cuyo único suceso tributable era el fallecimiento del transmitente de los bienes. En 1925 se modificó y amplió la contribución sobre transmisión de bienes por herencia, y mediante la Ley Núm. 99 de 29 de agosto (Leyes, pág. 791), se impuso la contribución cuando por el hecho de la muerte se transmitiesen *a*) bienes inmuebles en Puerto Rico pertenecientes a residentes o no residentes de Puerto Rico; *b*) bienes muebles en Puerto Rico o *fuera de Puerto Rico* pertenecientes a residentes en Puerto Rico; y *c*) *bienes muebles en Puerto Rico pertenecientes a no residentes.* La modificación principal que introduce esta ley es la de imponer contribución sobre bienes muebles pertenecientes a no residentes que estuvieren localizados en Puerto Rico y a bienes muebles pertenecientes a residentes de Puerto Rico, aunque dichos bienes estuviesen físicamente localizados fuera de la jurisdicción. Es decir, la imposición de contribución a los no residentes dependía exclusivamente de que tuviesen bienes muebles o inmuebles localizados o sitos en Puerto Rico. La contribución conservó esencialmente su condición de ser una sobre herencia. Mediante la Ley Núm. 303 de 12 de abril de 1946, supra, se altera sustancialmente la tributación de los bienes transmitidos por herencia, y se adopta un sistema que es en esencia una contribución sobre la *transferencia* de bienes. Al efecto se amplía el ámbito de la imposición y prácticamente se incluye toda clase de transferencias, sean éstas

*inter vivos* o *mortis causa.*(²) La contribución deja de ser exclusivamente una sobre los bienes o las personas, y específicamente sobre el caudal hereditario, y se convierte en una que considera como suceso tributable la transferencia o transmisión de bienes, o sea, que recae sobre *la facultad de transmitir los bienes* o sobre *el derecho a heredar*. En este sentido se abandona el concepto tradicional de contribución sobre los bienes y se adopta el enfoque reciente de contribución por el *privilegio* de transferir bienes. *People* v. *Fester*, 356 P.2d 130 (1960); *In re Clark's Estate*, 354 P.2d 112 (1960); *In re Birkeland's Estate*, 353 P.2d 667 (1960); *In re Ryan's Estate*, 102 N.W.2d 9 (N.D. 1960); *In re Hoffmann's Estate*, 160 A.2d 237 (Pa. 1960); *In re Hayman's Estate*, 98 S.E.2d 273 (W. Va. 1957); *Department of Taxation* v. *Weber*, 113 N.E.2d 141 (Ohio 1953); *Thompson* v. *Calvert*, 301 S.W. 2d 496 (Tex. 1957); *Kirkwood* v. *Bank of America, etc.*, 273 P.2d 532 (Cal. 1954); *State of California* v. *St. Louis Union Trust Co.* 260 S.W.2d 821, 826 (Mo. 1953), cert. expedido 348 U. S. 808 y anulado 348 U. S. 932.

Lo expuesto nos lleva a la inevitable conclusión de que a los fines de la imposición de la contribución solamente es

---

(²)La ley selecciona como suceso tributable la ocurrencia de una "donación", pero define este término (sec. 1) incluyendo no sólo la situación clásica que regula el Código Civil (arts. 558 a 598, 31 L.P.R.A. secs. 1981–2053), sino que comprende otra serie de transferencias, como la *transferencia* de una propiedad por menos de su justo valor, la condonación parcial o total de una deuda, el monto de las pólizas de vida bajo determinadas circunstancias, las *transferencias* en fideicomiso (*Belaval* v. *Tribunal de Expropiaciones*, 71 D.P.R. 265 (1950); *Alvarez* v. *Secretario de Hacienda*, 80 D.P.R. 16 (1957)) y "toda *transferencia* que se haga por herencia" testada o intestada. Mediante enmienda introducida por la Ley Núm. 103 de 25 de abril de 1950 (Leyes, pág. 263) se incluyó también dentro de la definición de "donación" la renta vitalicia y la constitución de usufructo por retención, cuando las partes se encuentran dentro del tercer grado de consanguinidad o segundo de afinidad. (El efecto práctico de esta enmienda fue dejar sin efecto nuestra resolución en *Blanco* v. *Registrador*, 70 D.P.R. 587 (1949).) Igualmente, de acuerdo con la sección 10 (13 L.P.R.A. sec. 891) se establece una presunción de "donación" en relación con las *transferencias* hechas por una persona mayor de 50 años, o dentro de los dos años anteriores al fallecimiento del causante, a favor de sus hijos, descendientes y otros parientes.

necesario que ocurra una transferencia de bienes o derechos en Puerto Rico. Toda referencia en la ley a la naturaleza de los bienes—tangibles o intangibles—o la condición de residentes de las partes, es claramente innecesaria, pues como hemos dicho, basta que ocurra una transferencia, ya que en tal caso no se trata de una contribución que recae sobre los bienes o sobre las personas, sino sobre el privilegio de *transferir* o *recibir*.[3]

▇▇▇ Ahora bien, de ser necesaria la clasificación de los bienes en tangibles o intangibles, creemos que el estatuto los incluye en forma suficiente. La ley vigente conservó varias disposiciones de la anterior—Ley Núm. 99 de 29 de agosto de 1925—y entre ellas el artículo 14 (13 L.P.R.A. sec. 882), que entre otras cosas, dispone que las palabras "bienes" o "propiedad" se entenderá que incluyen tanto bienes raíces como bienes *muebles* y semovientes, y cualquier forma de participación en ellos. Cualquier deficiencia en las definiciones se suple por las disposiciones del Código Civil, art. 12 del Código Civil (31 L.P.R.A. sec. 12) ; *Wood* v. *Tribunal de Contribuciones*, 71 D.P.R. 233 (1950). De conformidad con el artículo 259 de dicho cuerpo legal (31 L.P.R.A. sec. 1028), las cosas incorporales que consistan de un derecho se considerarán muebles o inmuebles dependiendo del objeto al que sean aplicables o sobre el cual recaigan. Y se consideran bienes muebles por disposición de ley "las *acciones* o *intereses* en bancos o compañías de comercio, industrias, o *cualquier otra especulación*". (Art. 268 del Código Civil, 31 L.P.R.A.

---

[3] La historia legislativa del Proyecto de la Cámara 837, que luego se convirtió en la Ley Núm. 303 de 1946, supra, no arroja luz alguna sobre el problema que consideramos. La Cámara de Representantes consideró el proyecto después de haber sido descargado del Comité de Hacienda, y por tanto, no tenemos el beneficio de informe alguno (Acta de la Cámara de Representantes, 1946, pág. 1561). Las enmiendas introducidas tanto por la Cámara (Actas, 1946, págs. 1640 a 1647) como por el Senado (Actas del Senado, 1946, págs. 1298 a 1304) no tienen relación alguna con la naturaleza de los bienes o la condición de residente a los fines de la imposición de la contribución.

sec. 1064.) Aunque es innecesario a los fines de resolver el presente litigio, añadiremos que, no obstante las admisiones en las alegaciones, (⁴) la transferencia de acciones ocurrida en este caso es tributable, por representar capital invertido en Puerto Rico. *Curry* v. *McCanless*, 307 U. S. 357 (1939) ; anotaciones en 76 A.L.R. 806; 79 A.L.R. 344; 104 A.L.R. 805. Cf. *González* v. *Secretario de Hacienda*, 75 D.P.R. 920, 925–928 (1954). Bajo tales circunstancias parece obvia la aplicación de la contribución en relación con su transferencia. El hecho de que los certificados de acciones se encuentran físicamente fuera de Puerto Rico no tiene el alcance de impedir el ejercicio del poder local de imponerle contribución, pues como se dijo en *Graves* v. *Schmidlapp*, 315 U. S. 657, 660 (1942), "los bienes intangibles constituyen meras relaciones legales entre individuos, y en realidad no tienen situación geográfica definida".

Reconocemos que la ley no contiene *mención expresa* a que la contribución se impondrá a los no-residentes. Define "donatario" como la persona que recibe una donación, según ésta se define en la ley; y "donante" como aquélla que hace, tiene el poder de hacer o retener la donación, o cambiar el donatario de la misma, e incluye el causante en el caso de propiedad que se *trasmita* por herencia (sec. 1). La contribución se impone al donatario de cada donación tributable (sec. 2). No obstante esta ausencia de mención expresa a los no-residentes, que repetimos era innecesaria, una lectura de toda la ley en conjunto revela que la intención del legislador fue incluirlos entre las personas obligadas a pagar la contribución. La sección 8(*a*) (13 L.P.R.A. sec. 889) esta-

---

(⁴) El Secretario de Hacienda admitió todos los hechos expuestos en la demanda, y entre ellos, que "todos los bienes del causante George D. Freeman que pasaron por herencia a la demandante, estaban físicamente localizados en Sturgis, Michigan, Estados Unidos de América, y *no existían bienes muebles o inmuebles en o dentro* de Puerto Rico a la fecha del fallecimiento de dicho causante". Cf. *Cooperativa Cafeteros de Puerto Rico* v. *Gobierno de la Capital*, ante, pág. 51, resuelto en 9 de febrero de 1961; *Coll* v. *Picó*, ante, pág. 27, 37–38 (1960).

blece la forma y el pago de la contribución en el caso de donaciones a no-residentes, y al efecto dispone que el donante residente que se propusiere hacer una donación a un no-residente, lo notificará al Secretario de Hacienda con treinta días de anticipación a la *transferencia;* que el Secretario computará la contribución; y lo informará al donante, quien retendrá la contribución; y que si el donante no cumpliere con esta obligación de retener, será personalmente responsable de su pago. Al conceder crédito por las contribuciones pagadas a otros gobiernos con motivo de la misma transferencia, la sección 5 (*a*) (13 L.P.R.A. sec. 887) considera los casos en que la contribución que se acredita ha sido impuesta por motivo de tener el donante *o el donatario* "status de tributable" en otra jurisdicción. (5)

■■ Por otro lado, hemos de presumir que cuando la Asamblea Legislativa aprobó la Ley 303 tenía conocimiento de que a los fines de la imposición de contribuciones como la que consideramos, la distinción entre residentes y no-residentes y bienes tangibles e intangibles, no tenía ninguna significación desde el punto de vista constitucional. Desde abril de 1942, la Corte Suprema de Estados Unidos en *State Tax Comm'n* v. *Aldrich,* 316 U. S. 174 (1942), había rechazado la regla de inmunidad contra la doble tributación que se había consagrado en *First National Bank* v. *Maine,* 284

---

(5) La parte pertinente de dicha sección lee como sigue:

"Se concederá como crédito contra la contribución que se impone por la Sección 2 el montante de cualquier contribución sobre sucesión, herencia o transferencia impuesta por el Gobierno de Estados Unidos de América o por cualquier otro gobierno extranjero . . . . *Disponiéndose, además,* que si dicha contribución se impone por motivo de tener el donante *status* de tributable en la jurisdicción, dicho crédito se concederá solamente si la susodicha jurisdicción no impone contribuciones sobre las transferencias hechas por residentes de Puerto Rico, o concede en tales casos un crédito contributivo que corresponda; *Y disponiéndose, además,* que si la contribución se impone por motivo de tener el donatario *status* de tributable en dicha jurisdicción, dicho crédito se concederá solamente si dicha jurisdicción no impone contribuciones sobre las transferencias hechas a residentes de Puerto Rico o concede en tales casos un crédito contributivo que corresponda."

U. S. 312 (1931) y *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204 (1930). La regla sobre la doble contribución ha sufrido varias alternativas: *a)* en *Blackstone* v. *Miller*, 188 U. S. 189 (1902) se sostuvo una contribución impuesta por Nueva York sobre la transferencia de créditos adeudados por un ciudadano de dicho estado a un domiciliado de Illinois, aun cuando este último estado había gravado todo el caudal hereditario. El Juez Holmes expresó que la transferencia "necesariamente depende de y envuelve la ley de Nueva York para su ejercicio"; *b)* en *First National Bank* v. *Maine*, supra, un tribunal dividido resolvió que no podía imponerse una doble contribución por el estado de residencia del transferente y aquel en donde se efectuaba la transferencia; y, *c)* en el caso de *Aldrich*, en donde se revoca expresamente el de *First National Bank*, se sostuvo el poder de más de un estado para imponer contribuciones por la transferencia de intangibles, y se reafirma el principio de que la facultad impositiva depende de que el estado brinde alguna protección o beneficio en relación con los intangibles de cuya transferencia se trate, o que cuando menos, la transferencia dependa de o envuelva la ley de dicho estado. Específicamente se consideró: 1) el hecho de que la corporación había sido organizada en el estado de Utah; 2) su existencia se regulaba por las leyes de Utah; y, 3) la transferencia de las acciones en los libros corporativos debía hacerse de acuerdo con las disposiciones de la ley de dicho estado.

La jurisprudencia local sobre la materia es escasa y no ha considerado expresamente el punto envuelto en el presente litigio. En *McCormick* v. *Domenech*, 44 D.P.R. 644 (1933), este Tribunal sostuvo la actuación del entonces Tesorero de Puerto Rico al incluir entre los bienes del caudal de un residente para la liquidación de la contribución sobre herencia ciertos depósitos de dinero, certificados de bonos y acciones que se encontraban consignados en bancos fuera de esta isla. Expresamente se aplicó la doctrina de *Farmers Loan Co.* v.

*Minnesota,* supra, al efecto de que la máxima *mobilia sequuntur personam* era aplicable a intangibles, que para los fines de contribución sobre herencia tenían su *situs* en el domicilio del propietario. Y en *Piacentini* v. *Buscaglia,* 59 D.P.R. 767 (1942) resolvimos que bienes muebles intangibles—depósitos en bancos, bonos y acciones, capital comanditario en una sociedad mercantil local y el saldo acreedor en una cuenta corriente en dicha sociedad—pertenecientes a una testadora residente en Francia estaban sujetos a contribución sobre herencia de acuerdo con nuestras leyes. En la opinión de dicho caso, decidido en 23 de enero de 1942, cuando aún no se había resuelto por el Tribunal Supremo de Estados Unidos el de *State Tax Comm'n* v. *Aldrich,* supra, añadimos que "No tenemos duda alguna en cuanto a que si la testadora en el caso de autos hubiese tenido su domicilio y fallecido dentro de un estado o territorio de la Unión Americana, el Gobierno de Puerto Rico no podría, de acuerdo con la decisión en *Farmers Loan and Trust Co.,* supra, imponer contribución de herencia sobre las obligaciones o bienes intangibles físicamente situados en Puerto Rico" (pág. 778). Significativamente dijimos, al resolver una moción de reconsideración presentada en dicho caso, que "Todas esas inversiones de dinero hechas en Puerto Rico, a tipos de interés más alto que los que se pagan en otros países gozan de la protección de nuestro gobierno y de nuestras leyes. Y parece justo que al ser trasmitidas por herencia contribuyan en la misma medida que lo hacen las inversiones de los residentes en el país al sostenimiento de los gastos de nuestro gobierno." ([6])

No cabe duda sobre el hecho de que la transferencia de las acciones a favor de la recurrente, por el hecho de la muerte de su esposo, se efectuará de acuerdo con la ley local sobre

---

([6]) Las acciones de que se trata en el presente caso son, como se ha dicho, de una corporación organizada y existente bajo las leyes de Puerto Rico. Dicha corporación es además una de las usufructuarias de la bonanza de la Ley de Exención Industrial de Contribuciones de 1948 (Ley Núm. 184 de 13 de mayo de 1948, pág. 483, 13 L. P.R.A. secs. 221 et seq.).

corporaciones privadas. Se trata de una corporación organizada bajo nuestras leyes, con oficinas principales en Mayagüez. Y hemos de presumir que el registro del traspaso de acciones se hará aquí, de acuerdo con las disposiciones de la anterior ley de 1911.(7) Este solo hecho de que la transferencia se haga bajo las disposiciones de nuestra ley justifica la facultad de nuestra Asamblea Legislativa para imponer la contribución. Es este uno de los beneficios que Puerto Rico concede, y a cambio de ello, como dijo el Juez Douglas en la opinión mayoritaria del caso de *Aldrich*, "puede pedir algo" (a la pág. 180). Como se expuso en *Wisconsin* v. *J. C. Penney Co.*, 311 U. S. 435, 444, la norma constitucional para determinar si la propiedad se ha tomado sin el debido proceso de ley es "si el poder de imponer contribuciones ejercitado por un estado tiene relación con la protección, oportunidades y ventajas concedidas por el estado. La cuestión sencilla, pero decisiva (controlling), es si el estado ha dado algo a cambio de lo cual pueda pedir algo" (pág. 444). Resulta claro que nos encontramos ante una transferencia cubierta por la definición estatutaria de "donación", y que además, las leyes locales han brindado beneficios y protección al transferente y al adquirente de las acciones.

---

(7) Las acciones que se consideran a los fines de la imposición de la contribución se expidieron con anterioridad al año 1953. Son aplicables, por tanto, en cuanto a su transferencia, las disposiciones de la Ley de Corporaciones de 1911. (Véase, art. 620 de la Ley Núm. 3 de 9 de enero de 1956) (Leyes, pág. 104, 14 L.P.R.A. sec. 1620), o sea el artículo 20 de la Ley Núm. 30 de 9 de marzo de 1911 (Leyes, pág. 93, 14 L.P.R.A. sec. 151), según enmendado por la Ley Núm. 94 de 12 de mayo de 1943 (Leyes, pág. 231), que en su parte pertinente dispone que:

"Toda corporación organizada bajo este subtítulo, llevará *en su oficina principal en el Estado Libre Asociado de Puerto Rico, registros de traspasos en que se asentarán las transferencias de acciones,* y registros de acciones que contendrán los nombres y direcciones de los accionistas y número de acciones que poseen, los cuales registros podrán en todo tiempo, durante las horas ordinarias de oficina, ser examinados por cualquier accionista; Disponiéndose, que *el secretario de la corporación vendrá obligado a enviar mensualmente al Secretario de Hacienda de Puerto Rico una relación debidamente certificada contentiva de las transferencias de acciones que se hayan realizado durante el mes, según aparezcan de dicho Registro de Transferencias; . . .*" (Énfasis suplido.)

■■■ La recurrente impugna además la actuación del Secretario de Hacienda al imponerle una penalidad igual al cinco por ciento de la contribución, por no haberse presentado oportunamente la notificación del fallecimiento requerida por la ley. La sección pertinente(8) impone a todo "administrador" que actúe en Puerto Rico o cualquier "subadministrador, agente o persona autorizada legalmente para administrar los bienes o cualquier parte de ellos en Puerto Rico", la obligación de trasmitir al Secretario, dentro de los sesenta días siguientes al fallecimiento, una notificación conteniendo cierta información sobre el fallecimiento y otras circunstancias. También dispone que cuando no se presentare la notificación dentro del término y en la forma indicada, se adicionará a la contribución en concepto de penalidad, una cantidad equivalente al dos (2) por ciento de la cantidad adeudada por cada período de treinta (30) días o fracción de tal período, mientras subsista la falta de penalidad; pero dicha penalidad no podrá exceder, en ningún caso, del cinco (5) por ciento de la cantidad adeudada. La palabra "administrador" comprende a cualquier heredero que estuviere encargado de la disposición y división de los bienes del fallecido.(9)

Interpretando conjuntamente estas dos disposiciones, dijimos en *Del Toro* v. *Tribunal de Contribuciones*, 65 D.P.R. 63, 68 (1945) que "es forzoso llegar a la conclusión de que no basta que una persona sea heredera o pariente de un difunto, para que sobre esa persona recaiga la obligación, que la Ley impone al administrador, albacea o fideicomisario, de trasmitir al Tesorero de Puerto Rico una notificación jurada del fallecimiento del causante. Para que sobre el heredero, pariente o beneficiario recaiga esa obligación, es requisito

---

(8) Art. 5 de la Ley Núm. 99 de 29 de agosto de 1925 (Leyes, pág. 791, 13 L.P.R.A. sec. 893).

(9) Art. 14 de la Ley 99 de 1925, *supra* (13 L.P.R.A. sec. 882).

indispensable que él sea el encargado de la *disposición* y división de los bienes del difunto o la persona legalmente autorizada para administrar los bienes". Y se añade que "las herederas peticionarias no estaban, en la fecha en que se envió la primera notificación, en posesión de los bienes".

De los hechos alegados en la demanda, que fueron aceptados en la contestación, aparece que la recurrente era la única y universal heredera de los bienes relictos al fallecimiento de su esposo. Debemos presumir, en ausencia de prueba en contrario, que como tal heredera, estaba encargada de la disposición de los bienes del testador, y se encontraba en posesión de los mismos. Bajo tales circunstancias carece de méritos su alegación de que no estaba obligada a presentar la notificación a que se refiere la ley. Tampoco concurren en este caso las circunstancias que consideramos suficientes en un caso similar para exonerar al contribuyente del pago de la penalidad. *P. R. Telephone Co.* v. *Secretario de Hacienda*, 79 D.P.R. 895, 938 (1957). Aun cuando la recurrente hubiese creído que no estaba obligada a satisfacer la contribución a base de su interpretación personal de la inaplicabilidad de la ley en su caso, nada le impedía presentar la notificación con la correspondiente reserva de que tal hecho no podía considerarse como una aceptación de responsabilidad legal del pago. En todo caso, nuestras leyes le permitían litigar la validez de cualquier imposición del Tesorero, y alegar entonces que no adeudaba suma alguna. Art. 2-A (4) de la Ley Núm. 235 de 10 de mayo de 1949 (Leyes, pág. 732) ; *Balbás* v. *Tribunal de Contribuciones*, 73 D.P.R. 244 (1952).

*Por los fundamentos expuestos se confirma la sentencia dictada por el Tribunal Superior, Sala de San Juan, (Hon. A. Fiol Negrón, Juez).*