SUCN. RONALD K. EVANS, ETC., demandantes y recurridos, *v.* SECRETARIO DE HACIENDA, demandado y recurrente.

*Número:* R-77-220      *Resuelto:* 22 de mayo de 1979

714

*Héctor A. Colón Cruz, Procurador General,* y *Maggie Correa Avilés, Procuradora General Auxiliar,* abogados del recurrente; *John F. Malley* y *Ramón Morán Loubriel,* abogados de los recurridos.

EL JUEZ ASOCIADO SEÑOR MARTÍN emitió la opinión del Tribunal.

El causante de los demandantes recurridos, Ronald K. Evans, falleció en el estado de Michigan, su domicilio, el 12 de junio de 1964. En su testamento designó herederos a su viuda Gladys M. Evans y a sus nietos Mary Ellen Douglas y Morgan Drexel Douglas III, todos ellos domiciliados en Michigan. Formaba parte de los bienes hereditarios del causante su participación como socio comanditario en el capital social de la sociedad en comandita organizada en el estado de Michigan bajo la razón social "El Conquistador Hotel Association, Ltd." (en adelante "la Sociedad"), cuya participación fue valorada por el Secretario de Hacienda en $272,000.00. El propósito de dicha sociedad es el de dedicarse al negocio hotelero en Puerto Rico. (¹)

El certificado de constitución de la sociedad en comandita se otorgó en Michigan bajo la ley aplicable—M.C.L.A. secs. 449.201 a 449.231—que es una adaptación de la Ley Uniforme de Sociedades en Comandita ("Uniform Limited Partnership Act"). La Sociedad no tiene características de una entidad corporativa. Sin embargo, el socio comanditario tiene generalmente inmunidad respecto a las deudas de la sociedad. Los socios organizadores son el causante Evans, como socio

---

(¹)También fueron incluidos en el caudal unos pagarés emitidos por la Sociedad a favor del causante localizados físicamente en Michigan, que evidenciaban deudas originadas en préstamos en efectivo que el causante hizo a la Sociedad para enjugar ciertas pérdidas sufridas por la Sociedad en la operación del Hotel El Conquistador en Puerto Rico, cuyos pagarés estaban aún impagados a la fecha de la muerte del causante. Dichos pagarés no son objeto de este recurso por haber determinado el tribunal de instancia que su traspaso por herencia no era evento tributable en esta jurisdicción. El Secretario de Hacienda no solicitó revisión de esa determinación. Ver, sin embargo, J. R. Hellerstein, *State and Local Taxation,* New York, 1952, págs. 491–492.

gestor y comanditario, [2] John E. Malley, como socio gestor, y Richard V. Light, como socio comanditario. Luego fue enmendado para incluir otros socios comanditarios. La sociedad pasó a ser dueña de todas las acciones emitidas y en circulación de "El Conquistador Hotel Corporation" y de "Trade Winds Development, Inc."—corporaciones organizadas bajo las leyes de Puerto Rico y cuyo presidente era el aquí causante.

La Sociedad tenía su oficina principal en Lansing, Michigan, y su sitio principal de negocios en Fajardo, Puerto Rico. No tenía oficinas ni hacía negocios en otras jurisdicciones, ni derivaba ingresos de otras fuentes que no fuesen sus actividades en el negocio hotelero puertorriqueño. Todos sus socios, con excepción de Malley, pero incluyendo al causante, eran residentes de Michigan. Las reuniones de los socios se celebraban en ese Estado y allí se tomaban las decisiones sobre la operación de los negocios.

La Sociedad, en cumplimiento de un plan de reorganización, que comprendía la total liquidación de las dos corporaciones mencionadas y la redención de todas sus acciones, adquirió los bienes inmuebles de las dos corporaciones puertorriqueñas mencionadas precedentemente y asumió la obligación de satisfacer las cargas y gravámenes sobre los inmuebles adquiridos, y simultáneamente adquirió todos los bienes muebles y asumió todas las obligaciones corporativas. Los bienes adquiridos por la Sociedad de dichas dos corporaciones consistían de unas fincas sitas en la municipalidad de Fajardo con sus respectivas edificaciones, así como las cuentas bancarias, cuentas por cobrar y otros activos misceláneos.

Si bien el causante de los demandantes recurridos era a la vez socio gestor y socio comanditario, su participación en los bienes y en las ganancias de la Sociedad, conforme lo dispone el contrato social, habría de limitarse a la participación a que tuviera derecho como socio comanditario.

---

[2] La Ley de Michigan permite tal interés dual. M.C.L.A. sec.. 449.212.

El Secretario de Hacienda, determinó que tanto los pagarés como la participación del causante en la sociedad comanditaria eran tributables bajo la Ley de Contribuciones sobre Herencias y Donaciones—Ley Núm. 303 de 12 de abril de 1946, según enmendada, 13 L.P.R.A. sec. 881 *et seq.*, en adelante, "Ley de Herencias de 1946", y cursó a los demandantes una notificación final y requerimiento de pago por concepto de contribución sobre herencias por la suma de $119,248.58. Los demandantes recurridos impugnaron ante el Tribunal Superior la determinación del Secretario por el fundamento de que la participación del causante en la Sociedad limitada constituye un bien mueble sujeto a las leyes del domicilio del causante, y que habiéndose realizado la transferencia de dicha participación a los herederos en el estado de Michigan, el Estado Libre Asociado de Puerto Rico carece de poder para imponer contribución de herencia sobre dicha participación. La valoración de dichos bienes no fue objetada.

El tribunal de instancia resolvió por sentencia sumaria que la transferencia por herencia de la participación del causante en una sociedad en comandita organizada bajo las leyes del Estado de Michigan, a sus herederos también residentes del mencionado Estado, no es evento tributable en Puerto Rico bajo la Ley Núm. 303 de 1946, por constituir dicha participación un bien mueble cuya transferencia por herencia se rige por la ley de Michigan. El Secretario de Hacienda recurre ante nos de esa determinación. Accedimos a revisar el único error señalado.

■ Nadie se permitiría cuestionar hoy día que el acrecimiento, graciosa y lucrativamente del patrimonio y la riqueza de la persona mediante el recibo de una herencia, constituye un hecho social y económico sobre el cual el Estado puede ejercer su abarcador poder tributario. Véase *Maristany* v. *Srio. de Hacienda*, 94 D.P.R. 291, 302 (1967). Sin embargo, cuando un Estado carece de jurisdicción o poder para tributar, el ejercicio de dicho poder resulta en una actuación

confiscatoria y por ende contraria al debido procedimiento de ley. *Miller Bros. Co.* v. *Maryland,* 347 U.S. 340, 342 (1953). A tenor con ese principio ha sostenido el Tribunal Supremo de los Estados Unidos que la imposición de un tributo, sin que medie jurisdicción sobre la propiedad o sobre la persona, constituye un acto *ultra vires* del poder público que no debe sostenerse. *St. Louis* v. *Ferry Co.,* 11 Wall. 423, 430 (1871), *New York, L.E. & W.R. Co.* v. *Pennsylvania,* 153 U.S. 628, 646 (1894). Así, reconocimos en *Maristany* v. *Srio. de Hacienda,* supra, que la validez de toda medida impositiva, dependerá, a tenor con las limitaciones constitucionales aplicables, de que medie algún vínculo racional entre el Estado que tributa y el sujeto u objeto del tributo.

■ Empezaremos por decir que nuestro Código Civil preceptúa que los bienes muebles están sujetos a la ley de la nación del propietario y los inmuebles a las leyes del país en que están sitos. Art. 10, Código Civil, ed. 1930, 31 L.P.R.A. sec. 10. Por otro lado, es norma cardinal en interpretación de estatutos que en controversias fiscales debe acudirse en primer término a las leyes y los principios fundamentales que rigen la materia. *Serrallés Galiano* v. *Srio. de Hacienda,* 84 D.P.R. 11 (1961). A su vez, las deficiencias de éstas se suplirán por las disposiciones del Código Civil. Art. 12, Código Civil, ed. 1930, 31 L.P.R.A. sec. 12.

■ El objeto del tributo en el caso de autos surge de nuestra anterior Ley de Herencias de 1946 por haber ocurrido la muerte del causante con anterioridad al 1ro. de enero de 1969, fecha en que entró en vigor nuestra actual Ley de Contribuciones sobre Caudales Relictos y Donaciones. Ley Núm. 167 de 30 de junio de 1968, 13 L.P.R.A. sec. 5001 *et seq.* El suceso tributable bajo la Ley de Herencias de 1946 incluía "toda transferencia que se haga por herencia, por testamento o abintestato", esto es, la contribución se puede imponer sobre la transferencia en sí o transmisión de los bienes

del causante, y no necesariamente sobre los bienes que componen propiamente el caudal hereditario. 13 L.P.R.A. sec. 881(a). *Freeman* v. *Srio. de Hacienda*, 82 D.P.R. 307, 310–312 (1961). Y, en cuanto a éstos, al definir la ley los términos "bienes" o "propiedad" incluye cualquier forma de *participación* en bienes muebles o inmuebles, "así como el usufructo, la nuda propiedad o *cualesquiera clase de derechos y acciones.*" 13 L.P.R.A. sec. 882. De suerte que toda transferencia por herencia de bienes o propiedad, así como de cualquier participación o derecho en ellos es tributable. Por ello dijimos en *Sucn. Mercado Parra* v. *Srio. de Hacienda*, 92 D.P.R. 710, 714 (1965), que se incluyen en la palabra "bienes" no sólo los objetos materiales que una persona posea, sino, también, un hecho al cual se pueda tener derecho o una acción que pueda hacerse valer.[3]

Nuestra tarea en este caso se reduce pues a precisar si para los fines de tributar la transferencia o transmisión de los bienes o cualquier participación o derecho en ellos, existe ese imprescindible vínculo racional, que exigimos en *Maristany*, entre el causante, sus herederos, la participación social heredada y el suceso hereditario mismo, de una parte, y el Estado Libre Asociado de la otra. Debe aclararse, sin embargo, que a los fines de la aplicación de la Ley de Herencias de 1946, ésta no distingue entre residentes y no residentes. Al respecto hemos resuelto que la residencia o no residencia en Puerto Rico de los herederos no juega papel en cuanto a la imposición de la contribución de herencia. *Sucn. S. Shefftz* v. *Srio. de Hacienda*, 93 D.P.R. 888, 896 (1967).

Al rechazar los demandantes el poder o jurisdicción del Estado para imponer la contribución que se les ha impuesto sobre su participación o derecho en el capital social de la So-

---

[3] La actual Ley de Contribuciones sobre Caudales Relictos contiene disposiciones expresas sobre lo que constituye el caudal relicto de un no residente. 13 L.P.R.A. secs. 5101–5109. Véase H. A. Segall, R. B. Kelley, y H. S. McConnell, *Estate Planning Comes to Puerto Rico*, 55 A.B.A.J. 464, 469 (1969).

ciedad del Estado de Michigan, apoyan su contención sustancialmente en *Rhode Island Trust Co.* v. *Doughton,* 270 U.S. 69 (1926), en el que descansó también el tribunal de instancia para darles la razón en el presente caso. En *Rhode Island* se resolvió que era inválida una contribución sobre herencia impuesta sobre la transferencia mortis causa de ciertas acciones corporativas de un no residente, cuando el único fundamento para dicha imposición descansa en que la corporación hace negocios y tiene dos terceras partes de sus propiedades en el Estado tributante. Según se indica, ese caso se resolvió en 1926. Un análisis de la jurisprudencia del Tribunal Supremo federal con posterioridad a la decisión de *Rhode Island,* a la luz de las circunstancias factuales y jurídicas que concurren en el caso de autos, nos hace creer que lo resuelto en aquel caso no es doctrina rectora en éste.

La cuestión sobre si los bienes relictos pueden ser tributables en una o más jurisdicciones estatales, concretamente en relación con intangibles, ha sido motivo de consideración a través del tiempo por el Tribunal Supremo de los Estados Unidos. Por haber variado la posición de dicho tribunal una y otra vez al respecto, examinemos las varias etapas habidas. En la primera etapa figuran como típicas las decisiones de *Blackstone* v. *Miller,* 188 U.S. 189 (1903), *Wheeler* v. *Sohmer,* 233 U.S. 434 (1914) y *Bullen* v. *Wisconsin,* 240 U.S. 625 (1916), en las que se reconoció que el estado del domicilio del propietario podía tributar todos los intangibles comprendidos en el caudal hereditario, sin que existiere objeción constitucional a que otros estados que demostraran relación significativa con la propiedad transferida, promovieran también sus intereses fiscales. (4) La segunda fase está represen-

---

(4) Expresó el Tribunal Supremo en *Blackstone* v. *Miller,* supra, págs. 204–205:

"Indudablemente el poder de dos Estados para imponer contribuciones ofrece alguna dificultad cuando se basa en principios diferentes y más o menos inconsistentes. Además, es de lamentar que un mismo Estado esté por un lado imponiendo contribuciones conforme a la realidad de su poder,

tada por una serie corta de decisiones en la que se destacan *Farmers Loan & Trust Co.* v. *Minnesota*, 280 U.S. 204 (1930) y *First National Bank* v. *Maine*, 284 U.S. 312 (1932). En ambos casos el Tribunal revocó las decisiones que forman su primera etapa, basándose en limitaciones constitucionales que hubo de entender surgían de la Decimocuarta Enmienda, y estableció una regla de inmunidad que evitaba la tributación múltiple de intangibles. [5] El caso de *Rhode Island Trust Co.* v. *Doughton*, 270 U.S. 69 (1926), que invocan los demandantes a su favor, y en el que se apoyó el tribunal de instancia para resolver contra el Secretario de Hacienda, y que habremos de comentar más adelante, aparece en el umbral de este segundo estadio que poco habría de durar. La tercera etapa comprende varias decisiones posteriores, entre las que se encuentran *Curry* v. *McCanless*, 307 U.S. 357 (1939), en las que el Tribunal Supremo federal abandonó las limitaciones jurisdiccionales sobre tributación de intangibles que había establecido al revocar expresamente a *First National Bank* v. *Maine*, supra. *State Tax Commission of Utah* v. *Aldrich*, 316 U.S. 174 (1942). [6] Ver P. A.

---

y por otro lado, y simultáneamente, conforme a la ficción legal de que, en sucesiones por causa de muerte, *mobilia sequuntur personam* y domicilio, gobiernan el todo. Pero estas inconsistencias no infringen derecho constitucional alguno. *Coe* v. *Errol*, 116 U.S. 517, 524; *Knowlton* v. *Moore*, 178 U.S. 41."

[5] En *Farmers Loan & Trust Co.* v. *Minnesota*, supra, págs. 209, 212 se dice:

"*Blackstone* v. *Miller* ya no puede considerarse como una exposición correcta del derecho vigente; y para evitar malentendidos, queda definitivamente revocado.

· · · · · · · ·

"Hemos determinado que, en general, los intangibles pueden ser propiamente tributados en el domicilio de su dueño, y no encontramos razón suficiente para decir que éstos no tienen derecho a gozar de inmunidad contributiva en más de un lugar, de manera similar a la provista para los tangibles."

[6] Por voz del Juez Douglas se expresó el tribunal con el siguiente lenguaje tomado de *Wisconsin* v. *J. C. Penney Co.*, 311 U.S. 435, 444 (1940):

Freund, *et als.*, *Constitutional Law*, Fourth Ed., Boston, 1977, pág. 563.

■ Es después de esta tercera etapa que se adopta en Puerto Rico la Ley de Herencias de 1946. El estado de la jurisprudencia en torno al problema constitucional aquí suscitado, esto es, la posición adoptada por el Tribunal Supremo federal en la última línea de casos citados, demuestra que no se reconocía entonces ninguna regla constitucional de inmunidad respecto a la tributación de intangibles por más de una jurisdicción. Esa interpretación no ha variado hasta el presente. En el caso de certificados de acciones, la jurisdicción contributiva no está restringida al estado del domicilio de su dueño. A la luz del caso de *Aldrich*, supra, el Estado donde el certificado de acción esté sito, así como el Estado o Estados de incorporación y cualquier otro Estado que haya extendido beneficios o protección a dichas acciones o que pueda demostrar el hecho práctico de su poder o soberanía en relación con aquéllas, puede de igual modo hacer constitucionalmente su exacción. Ver A. S. Guterman, *Revitalization of Multiple State Death Taxation*, 42 Colum. L. Rev. 1249, 1273–1277 (1942).

El esencial efecto jurídico que tuvo el caso de *Rhode Island*, fue negar que el hecho de que una corporación llevara a cabo negocios en determinado estado y que más de la mitad de sus propiedades radicaran allí sirviera de fundamento o vínculo suficiente para que ese Estado impusiera tributo sobre el traspaso mortis causa de sus acciones. Con posterioridad a *Rhode Island*, sin embargo, el Tribunal reconoció que el

---

"Un estado está en libertad de realizar su propia política fiscal, libre de impedimentos constitucionales, si mediante la operación práctica impositiva ha ejercido su poder en relación a las oportunidades que ha concedido, la protección que ha sufragado, y los beneficios que ha concedido por razón de ser una sociedad ordenada y civilizada."
Y concluyó diciendo:

"Por las razones expuestas, entendemos que *First National Bank* v. *Maine* no debe sobrevivir."

estado donde la corporación tuviera su lugar de negocios, tiene capacidad para imponer tributo sobre *la propiedad* de sus acciones. *Wheeling Steel Corp.* v. *Fox,* 298 U.S. 193 (1936); *First Bank Stock Corp.* v. *Minnesota,* 301 U.S. 234 (1936). Para armonizar estas posiciones algunos autores distinguieron los casos a base de la débil sutileza de que en estos últimos se trataba de un tributo sobre la propiedad mientras que *Rhode Island* de una contribución sobre traspaso por herencia. Comment, *Commercial Domicile and Multi-State Property Taxation of Intangibles,* 16 Tex. L. Rev. 277, 234 (1938). Posteriormente, sin embargo, a la luz de los casos de *Curry* v. *McCanless,* supra, y su secuela, la distinción fue descartada. R. L. Howard, *State Jurisdiction to Tax Intangibles: A Twelve Year Cycle,* 8 Mo. L. Rev. 155, 162 (1943).

■ La doctrina de *Curry* y *Aldrich* expandió, pues, decisivamente el restrictivo criterio expuesto en *Rhode Island* que en materia de acciones limitaba las posibilidades de tributación exclusivamente al estado del domicilio de su titular y al estado de incorporación de la misma.(⁷) Bajo la última postura del Tribunal Supremo federal cualquier otro estado que ofrezca protección o beneficio razonable en relación al intangible heredado, puede también ejercer su actividad fiscal con respecto a aquél. Es por ello que los autores sostienen que la solución de la controversia que se suscitó en *Rhode Island* debe ser hoy distinta. Entienden éstos que no existe base para sostener que el estado donde se llevan a cabo sustanciales negocios corporativos no tiene vínculo suficiente que le conceda

---

(⁷) En la opinión de *Rhode Island* se expresó el tribunal con las siguientes palabras:

"En cuestiones de cosas incorporales, tales como derechos, acciones, y bonos, sitas en el mismo lugar del dueño, una contribución sobre transmisión de bienes puede naturalmente ser impuesta por el estado en que dicho dueño reside. Está bien establecido también que el Estado en el que está organizada una corporación puede proveer, al crear dicha corporación, para la imposición de contribuciones en ese Estado sobre todas sus acciones, ya sean éstas propiedad de residentes o de no residentes." Pág. 81.

jurisdicción para ejercer la gestión fiscal. D. W. Morton y H. A. Colton, *Limitations on State Jurisdiction to Levy Death Taxes*, 5 Miami L.Q. 449, 461 (1951) ; *How Far Will Multi-State Death Taxation Go?* 1 Vand. L. Rev. 93, 107 (1947) ; *Withdrawal of Due Process Limitations on State Tax Jurisdiction*, 50 Yale L.J. 900, 906 (1941).([8])

---

[8] Aun en sus hechos el caso de *Rhode Island* se distingue del de autos. La cuestión que presentaba ese caso era si el Estado de Carolina del Norte podía válidamente imponer un impuesto de transferencia o de herencia sobre unos certificados de acciones poseídos por un no residente en una corporación organizada bajo las leyes de Nueva Jersey. La corporación estaba admitida y hacía negocios en Carolina del Norte. Ese Estado impuso una contribución sobre el derecho de transmisión de las referidas acciones, no sobre las acciones en sí, equivalente a ⅔ del valor en el mercado de las acciones. El Tribunal determinó como cuestión de derecho que el Estado carecía de poder para tasar la transferencia de la propiedad de un no residente a menos que tuviera jurisdicción sobre la propiedad en sí en que se basara el derecho de transferencia. El Tribunal aceptó, sin embargo, que reconocía el poder del Estado de residencia del recipiente de la transferencia para imponer la contribución. También reconoció el poder del Estado en que estaba organizada la corporación, aunque los recipientes fueran no residentes. El fundamento utilizado por el Tribunal fue que el accionista no era dueño de las propiedades que radican en el Estado de Carolina del Norte sino que las mismas pertenecen a la corporación, y consiguientemente que la jurisdicción para fines contributivos no puede ejercerse sobre la localización de una parte de la propiedad en dicho Estado; a menos que el Estado no hubiera impuesto estatutariamente una condición por virtud de la cual el accionista en esas circunstancias se sometía a la jurisdicción contributiva del Estado por el mero hecho de que la corporación hacía negocios en el Estado.

Aunque el Tribunal Supremo no expresó criterios prácticos que militan contra la imposición de contribuciones de herencia por los distintos estados sobre la proporción de los negocios que llevan a cabo en sus fronteras las distintas corporaciones no domésticas, compartimos la preocupación de autores como Abraham S. Guterman en su ensayo que hemos citado, al visualizar la situación difícil que podría surgir con respecto a la situación señalada si varios estados fueran a imponer un tributo basado en la proporción en que una corporación hace negocios en cada estado o en la proporción del valor de las propiedades que en cada uno radican.

El caso ante nos no presenta, sin embargo, la dificultad del de *Rhode Island*. Ya señalamos que la Sociedad "El Conquistador Hotel Association, Ltd." fue organizada con el propósito de llevar a cabo negocios en Puerto Rico; su único lugar de negocios se encontraba en Fajardo, Puerto Rico; no derivaba ingresos de otras fuentes que no fuesen sus actividades en Puerto Rico y todos sus activos, aquí estaban sitos.

Ha quedado demostrado que los socios de la Sociedad "El Conquistador Hotel Association, Ltd." han disfrutado de las oportunidades y las ventajas que ofrece nuestra jurisdicción, a través de las leyes locales que le han proporcionado beneficios y protección al capital del causante que representa la participación social heredada. *Freeman* v. *Srio. de Hacienda*, 82 D.P.R. 307, 314 (1961) ; (9) *Schuylkill Trust Co.* v. *Penna.*, 302 U.S. 506, 516 (1938); *Tappan* v. *Merchants National Bank*, 19 Wall. 490, 503–504 (1873). Advertimos, en consecuencia, un estrecho e importante vínculo entre Puerto Rico y la participación de los demandantes en "El Conquistador Hotel Association, Ltd.", que le confiere jurisdicción al Estado para ejercer su gestión fiscal.

Es indudable que el efectivo desempeño de las gestiones comerciales en Puerto Rico depende, tanto para sociedades domésticas como para sociedades extranjeras, de la protección que consagra el palio de nuestra legislación que atenúa significativamente el hito diferenciador que distingue a las unas de las otras. (10) Ver A. S. Guterman, *Revitalization of Multiple State Death Taxation*, 42 Colum. L. Rev. 1249, 1274–1275 (1942).

Conviene, antes de concluir, recalcar cuanto dijimos en *Piacentini* v. *Buscaglia*, en reconsideración, 59 D.P.R. 767, 784–785 (1942), a los efectos de que las ". . . inversiones de dinero hechas en Puerto Rico . . . gozan de la protección de nuestro gobierno y de nuestras leyes. Y parece justo que al ser trasmitidas por herencia contribuyan en la misma medida que lo hacen las inversiones de los residentes en el país al sostenimiento de los gastos de nuestro gobierno."

---

(9) En *Freeman*, supra, al adoptar la doctrina de *Curry* v. *McCanless*, dijimos que "la transferencia de acciones ocurrida en este caso es tributable por representar capital invertido en Puerto Rico."

(10) Véanse el Art. 15 del Código de Comercio, 10 L.P.R.A. sec. 1036 y *Cámara Insular Etc.* v. *Anadón*, 83 D.P.R. 374, 379 (1961).

*Por todo lo expuesto anteriormente se dictará sentencia dejando sin efecto la sentencia sumaria dictada el 13 de mayo de 1977 por el Tribunal Superior, Sala de San Juan, que dispuso que carecía de poder el Estado Libre Asociado de Puerto Rico para imponer tributo a la participación heredada por los demandantes en la Sociedad en comandita "El Conquistador Hotel Association, Ltd.", y devolviendo el caso para que se determine la cuantía de la contribución sobre herencia a ser pagada por los demandantes.*

Los Jueces Asociados Señores Rigau y Dávila no intervinieron.

