EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Popular de Puerto Rico<br><br>    Recurrente<br><br>        v.<br><br>Registrador de la Propiedad,<br>Sección de Aguadilla;<br>Hon. Frank Quiñones Vigo<br><br>        Recurrido | Certiorari<br><br>2007 TSPR 190<br><br>172 DPR \_\_\_\_ |

Número del Caso: RG-2006-2

Fecha: 30 de octubre de 2007

Abogados de la Parte Recurrente:

                    Lcda. Alondra M. Fraga Meléndez
                    Lcdo. Juan H. Soto Solá

Abogado de la Parte Recurrida:

                    Por Derecho Propio

Materia: Recurso Gubernativo

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Popular de Puerto Rico
          Recurrente

|  | RG-2006-2 | Recurso Gubernativo |

          v.

Registrador de la Propiedad,
Sección     de     Aguadilla;
Hon. Frank Quiñones Vigo
          Recurrido

Opinión del Tribunal emitida por la Jueza Asociada señora FIOL MATTA

En San Juan, Puerto Rico, a 30 de octubre de 2007.

Para atender los hechos de este caso debemos precisar las solemnidades requeridas para la validez de un contrato de donación en la República Dominicana y en nuestro ordenamiento, con el fin de determinar si un documento otorgado en aquel país puede ser inscrito en el Registro de la Propiedad al amparo del artículo 46 de la Ley Hipotecaria de 1979, 30 L.P.R.A. sec. 2209.

I

El 30 de septiembre de 1985 el Sr. Jesús María Felipe Rosario y la Sra. Miriam González Machado, casados entre sí, adquirieron una propiedad ubicada en el Barrio Mora del Municipio de Isabela,

Puerto Rico, por el precio de $38,300.00 y con conocimiento de que dicha propiedad estaba gravada por una hipoteca a favor del Banco Popular de Puerto Rico (Banco Popular). El 18 de septiembre de 1987 se divorciaron por consentimiento mutuo y en la sentencia de divorcio acordaron que el señor Felipe Rosario le vendería a la señora González Machado su participación sobre la propiedad situada en Isabela.

Según acordado, el 19 de noviembre de 1998 el señor Felipe Rosario vendió, cedió y transfirió a la señora González Machado todos sus derechos sobre el inmueble de referencia por la suma de cien pesos de oro de la República Dominicana. Esta venta se llevó a cabo ante un notario público de dicho país, a través del documento titulado "Contrato de Venta Bajo Firma Privada", al cual se le añadió la certificación del Consulado de los Estados Unidos de América en República Dominicana.

El 17 de abril de 1999 la señora González Machado suscribió la Escritura Núm. 53 sobre "Protocolización de Contrato de Venta Bajo Firma Privada" ante un notario público, en el Municipio de Isabela, Puerto Rico. El notario transcribió en la escritura el "Contrato de Venta Bajo Firma Privada" otorgado en República Dominicana. Además, lo unió a la escritura e hizo constar que el propósito de la protocolización era elevar el contrato privado a un documento público en nuestra jurisdicción.

El 15 de junio de 1999 el Banco Popular presentó una demanda en cobro de dinero y ejecución de hipoteca contra el señor Felipe Rosario, la señora González Machado y la sociedad de bienes gananciales compuesta por éstos. Durante el proceso, el Banco Popular se enteró del divorcio y de la Escritura Núm. 53, por lo que solicitó que se continuara la acción sólo contra la señora González Machado.

El Banco Popular presentó la Escritura Núm. 53 ante el Registro de la Propiedad, para su inscripción, el 7 de marzo de 2006. El Registrador se negó a inscribir el documento. Indicó que la protocolización del documento de compraventa no tiene el efecto de elevarlo a escritura pública, ni le da acceso al Registro de la Propiedad. Además, señaló que el documento de compraventa no incluía una equivalencia del precio de venta en dólares, lo cual era indispensable para fijar los aranceles notariales y registrales. El Banco Popular presentó un escrito de recalificación, en el cual, entre otras cosas, informó que la equivalencia en dólares del precio de venta del inmueble es $6.26959. El Registrador sostuvo su denegatoria.

En el Recurso Gubernativo presentado ante este Tribunal el 1 de noviembre de 2006, el Banco Popular alega que el Registrador erró al denegar la inscripción de la Escritura Núm. 53 sin tomar en consideración lo dispuesto en el Artículo 46 de la Ley Hipotecaria, 30 L.P.R.A. sec.

2209 y el Artículo 11 del Código Civil, 31 L.P.R.A. sec.
11. Posteriormente, el Registrador presentó su alegato en
respuesta al recurso. Con la comparecencia de ambas partes
pasamos a resolver.

II

El artículo 46 de la Ley Hipotecaria de 1979, 30
L.P.R.A. sec. 2209, dispone que los documentos otorgados
fuera de Puerto Rico podrán ser inscritos en el Registro
de la Propiedad si reúnen los siguientes requisitos:

> Primero– Que el asunto o materia del acto o
> contrato sea lícito o permitido por las leyes de
> Puerto Rico.
>
> Segundo– Que los otorgantes tengan la aptitud y
> capacidad legal necesarias para el acto o
> contrato con arreglo a las leyes de su país. Sin
> embargo cuando se relacionen con bienes de
> menores de edad y de incapacitados, deberá
> haberse dado cumplimiento a las disposiciones
> legales vigentes en Puerto Rico.
>
> **Tercero– Que en el otorgamiento se hayan
> observado las formas y solemnidades del
> territorio o país donde se han verificado los
> actos o contratos, o las de Puerto Rico.**
>
> Cuarto– Que el documento contenga la legalización
> y demás requisitos necesarios para su
> autenticación en Puerto Rico.
>
> Quinto– Que dicho documento haya sido
> protocolizado por un notario en Puerto Rico si
> para su eficacia no requiere trámite judicial.
> (Énfasis suplido) 30 L.P.R.A. sec. 2209.[1]

---

[1] Respecto al artículo 46, el Informe a la Cámara de
Representantes sobre la Ley Hipotecaria de 1979 explica lo
siguiente:

> Los Artículos 45, 46 y 47 contienen disposiciones
> legales del campo del derecho internacional
> privado "Conflicts of Law" en cuanto a documentos
> otorgados fuera de Puerto Rico… Se persigue con
> los mismos que los documentos provenientes de
> otras jurisdicciones sean lo mas confiables

Según el tercer requisito del artículo 46, un documento otorgado fuera de Puerto Rico tendrá acceso al Registro de la Propiedad si cumple con las formas y solemnidades del país donde fue otorgado o las de nuestra jurisdicción. Esto nos requiere discutir las formas y solemnidades requeridas en la República Dominicana y Puerto Rico respecto al negocio jurídico ante nuestra consideración.

Para ello es necesario precisar cuál es el negocio jurídico exacto que da lugar a este recurso. Se trata de un contrato relativo a un bien inmueble regulado, por ende, por el artículo 10 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 10, que dispone que los bienes inmuebles se regirán por las leyes del país en que estén sitos. Aplica, por tanto, la norma conocida en el Derecho Internacional Privado como *lex rei sitae,* según la cual los actos y contratos relativos a bienes inmuebles se regirán por las leyes del país en que éstos estén ubicados. Sucn. Evans v. Srio. De Hacienda, 108 D.P.R. 713, 718 (1979). Véase además, Zarelli v. Registrador, 124 D.P.R. 543, 550 (1989).

El documento ante nuestra consideración tiene el propósito de traspasar la titularidad de una finca en Isabela, Puerto Rico, por el precio aproximado de seis dólares. El precio que pagaron los contratantes para

---

posible. Informe a Cámara de Representantes de junio de 1979 sobre P. del S. 792, 8va. Asamblea Legislativa, 3ra. Sesión Ordinaria.

adquirir el inmueble sobrepasó los treinta y ocho mil dólares. Ante esta realidad debemos recordar la normativa que hemos desarrollado jurisprudencialmente sobre la simulación relativa contractual. Ésta ocurre cuando los contratantes llevan a cabo un negocio jurídico aparente que encubre otro real con causa lícita, fingido o disimulado. En específico, hemos resuelto que hay una donación disimulada en un contrato de compraventa cuando la causa de dicho contrato no es onerosa, sino que responde a la mera liberalidad de uno de los contratantes, el donante. Hernández Usera v. Srio. De Hacienda, 86 D.P.R. 13 (1962). Véase además, La Costa Sanpedro v. La Costa Bolívar, 112 D.P.R. 9 (1982), Díaz García v. Aponte Aponte, 125 D.P.R. 1 (1989).

En la República Dominicana las donaciones de bienes inmuebles son un acto jurídico solemne. El artículo 931 del Código Civil de la República Dominicana dispone:

> Todo acto que contenga donación entre vivos, **se hará ante notario**, en la forma ordinaria de los contratos, protocolizándose, bajo pena de nulidad. (Énfasis suplido) N. Soto Castillo, Código Civil y Compendio de Legislación Complementaria, 13 ra. ed., Santo Domingo, D.N., 2003, pág. 145.

Según este artículo, en el derecho común de la República Dominicana las donaciones de bienes inmuebles son un acto jurídico solemne que debe constar en forma auténtica o acto auténtico, no en acto bajo firma privada. El tratadista de Derecho Notarial dominicano, Dr. Manuel Víctor Gómez Rodríguez, explica que el artículo 931 del

Código Civil de la República Dominicana requiere que las donaciones de bienes inmuebles consten en acta notarial y no en un acto bajo firma privada. M.V. Gómez Rodríguez, Tratado de Derecho Notarial Dominicano, Santo Domingo, 1997, pág. 66.[2]

Según Gómez Rodríguez, en un acta notarial el notario da fe del contenido del documento. En particular, la autenticación y clausura del acta "consiste de la declaración del notario mediante la cual él certifica y da fe de que este documento ha sido elaborado y firmado por él, **de todo lo cual, él certifica y da fe**, concediéndole la autentificación inherente a los actos de la autoridad pública, es decir la fe pública, por la cual tiene que ser creído por si mismo y la plena fe de que se basta así mismo como medio de prueba completo y por excelencia del contenido del mismo…". M.V. Gómez Rodríguez, op cit., págs. 49-50.

---

[2] Los artículos 1317 y 1322 del Código Civil de la República Dominicana definen lo que son actos auténticos y actos bajo firma privada de la siguiente manera:

> Es acto auténtico el que **ha sido otorgado por ante [sic] oficiales públicos,** que tienen derecho a actuar en el lugar donde se otorgó el acto, y con las **solemnidades requeridas por la ley.** (Énfasis suplido) Art. 1317 del Código Civil de la República Dominicana.

> El acto bajo firma privada, reconocido por aquél a quien se le opone, o tenido legalmente por reconocido, tiene entre los que lo han suscrito y entre sus herederos y causahabientes, la misma fe que el acto auténtico. Art. 1322 del Código Civil de la República Dominicana.

Sin embargo, en un acto bajo firma privada, el notario sólo da fe sobre la autenticidad de las firmas y no del contenido del documento. Al respecto Gómez Rodríguez explica:

> [E]s conveniente explicar que el contenido del acto bajo firma privada NO LIGA al notario, el cual UNICAMENTE, tiene responsabilidad sobre las firmas, si estas son las de las personas a las que el acto se refiere y si la estamparon libre y voluntariamente y en la fecha indicada, NO existe ninguna responsabilidad notarial. M.V. Gómez Rodríguez, op cit., págs. 121-122.

Respecto a la solemnidad de las donaciones de bienes inmuebles, el tratadista de Derecho Civil dominicano, Carlos Romero Butten, explica lo siguiente:

> En principio, la donación es un acto solemne, que **debe ser pasado ante un Notario** (Art. 391 C. Civil). La solemnidad del acto se explica por su gravedad: **el Notario pondrá su atención sobre la disposición y sobre el carácter definitivo de la enajenación que consiente el donante.** Sin embargo, de hecho, **la regla de la solemnidad concierne a las donaciones de inmuebles,** por lo que muchas donaciones se realizan sin acto notarial, o mediante actos simulados o disfrazados. C. Romero Butten, Tratado Elemental de Derecho Civil, Santo Domingo, D.N., 2001, pág. 346.

En cuanto al Derecho Inmobiliario dominicano, el artículo 189 de la Ley de Registro de Tierras de la República Dominicana establece los requisitos de redacción de los actos jurídicos. Dicho artículo dispone, en lo pertinente:

> Los actos o contratos traslativos de derechos registrados, así como aquellos que estén destinados a constituir, radiar, reducir, prorrogar o extinguir gravámenes sobre inmuebles registrados, o que de cualquier forma afecten o se relacionen con esos mismos derechos, podrán redactarse en forma auténtica o bajo escritura

privada. Art. 189, Ley 1542 de Registro de Tierras, Santo Domingo, D.N., 1999.

El tratadista Rafael Ciprián explica que aunque el artículo 189 de la Ley de Registro de Tierras de la República Dominicana permite que los actos jurídicos que recaigan sobre bienes inmuebles sean redactados en forma auténtica o bajo escritura privada, **las donaciones de inmuebles siempre tendrán que hacerse conforme al derecho común**, o sea, en la forma de los actos auténticos y no bajo firma privada. En lo pertinente, Rafael Ciprián expresa lo siguiente:

> El Artículo 189, modificado por las Leyes No. 1860, de fecha 18 de diciembre de 1948 y la No. 132, de fecha 20 de abril de 1961, de la Ley de Registro de Tierras es la columna vertebral de toda la serie de requisitos que impone el Legislador para la redacción de los actos jurídicos.
> El referido texto legal establece que todos los actos traslativos de derechos inmobiliarios, o los que tengan por finalidad "constituir, radiar, reducir, prorrogar o extinguir gravámenes sobre inmuebles registrados, o que de cualquier forma afecten o se relacionen con esos mismos derechos, podrán redactarse en forma auténtica o bajo escritura privada".
> La disposición que establece que los actos jurídicos que se refieran a derechos inmobiliarios registrados podrán ser redactados en forma auténtica o bajo escritura privada, es muy importante. Primero porque reitera el carácter liberal de la Jurisdicción Catastral, y el interés del Legislador por facilitar las operaciones comerciales inmobiliarias y, segundo, porque introduce modificaciones importantes al derecho común. **Sabemos que los actos de donación o de hipoteca en terrenos registrados tienen que hacerse en la forma de los actos auténticos, conforme al derecho común.**
> **Ya sea que el acto jurídico se redacte en la forma auténtica o en la forma correspondiente a los denominados actos bajo firma privada, se tendrán que respetar las formalidades que establece el derecho común.** (Énfasis suplido) R.

> Ciprián, Tratado de Derecho Inmobiliario, 1ra.
> ed., Santo Domingo, D.N., 2003, págs. 870-871.

De igual forma, en nuestra jurisdicción las donaciones de bienes inmuebles son un acto jurídico solemne. En Hernández Usera v. Srio. De Hacienda, supra, establecimos que una donación disimulada de un bien inmueble es válida si cumple con los requisitos de forma *ad solemnitatem* de las donaciones de bienes inmuebles. En lo pertinente, el artículo 575 del Código Civil dispone lo siguiente:

> Para que sea válida la donación de cosa inmueble ha de hacerse en escritura pública, expresándose en ella individualmente los bienes donados y el valor de las cargas que deba satisfacer el donatario.
> La aceptación podrá hacerse en la misma escritura de donación o en otra separada; pero no surtirá efecto si no se hiciese en vida del donante. 31 L.P.R.A. sec. 2010.

Por lo tanto, el contrato simulado que encubre la donación tiene que ser otorgado en escritura pública, describir los bienes donados individualmente y hacer constar la aceptación del donatario en la misma o en una escritura separada, pudiendo deducirse tal aceptación de la firma del documento simulado. En caso de una donación onerosa, en la que se le impone al donatario un gravamen sobre el valor de lo donado, el contrato simulado debe expresar las cargas que el donatario asume.[3] Id., en la pág. 25.

---

[3] En lo pertinente, el artículo 560 del Código Civil, 31 L.P.R.A. sec. 1983, dispone lo siguiente:

Las donaciones entre vivos pueden ser de tres clases:

Véanse además, La Costa Sanpedro v. La Costa Bolívar,

supra, en la pág. 26 y Suc. Toro Morales v. Suc. Toro

Cruz, 2004 T.S.P.R. 41.

Los tratadistas Díez-Picazo y Gullón Ballesteros

explican que las formalidades *ad solemnitatem*:

> [S]on aquellas que necesitan una clase de negocios jurídicos para su existencia o nacimiento. La forma en ellos es sustancia, de tal modo que no existen como tales negocios si no aparecen celebrados bajo la forma ordenada legalmente. Así, por ejemplo, la donación de bienes inmuebles sin este requisito (v. gr., en documento privado) es radicalmente nula e inexistente. L. Díez-Picazo y a. Gullón Ballesteros, Sistema de Derecho Civil, 9na ed., Madrid, Editorial Tecnos, 1997, Volumen I, pág. 512.

En Hernández Usera v. Srio. De Hacienda, supra,

explicamos que la importancia de los requisitos de forma

de las donaciones disimuladas de bienes inmuebles radica

en su finalidad, que es proteger "al transferente contra

sus desordenados impulsos, a su cónyuge, herederos y

acreedores contra las lesiones de los derechos que el

régimen económico familiar, la ley sucesoria o el

principio patrimonial le confieren, y al donatario contra

los riesgos de una adquisición en apariencia precaria o

por lo menos desprovista de las defensas que las

---

(1) La donación puramente graciosa o la que se hace sin condición y por mera liberalidad.

(2) La **donación onerosa,** o aquella en que se impone al donatario un gravamen sobre el valor de lo donado.

(3) La donación remuneratoria, o la que se hace a una persona por sus méritos o por servicios prestados al donante, siempre que no constituyan deudas exigibles. Énfasis suplido) 31 L.P.R.A. sec.1983.

(4)

obligaciones recíprocas y los actos formales ponen en juego". Id., en la pág. 23 (citando la sentencia dictada el 5 de noviembre de 1956 por el Tribunal Supremo de España).[4]

---

[4] En lo pertinente, la cita del Tribunal Supremo de España expresa lo siguiente:

"[C]on arreglo a la tradición española, en el campo de las donaciones puras y simples de inmuebles, por reflejar los hechos *inter vivos* más que un modo abstracto e independiente de transferir la propiedad, un acto liberal que atribuye el dominio al donatario gratuitamente y que por significar una merma, sin contraprestación, del patrimonio del donante, y su enriquecimiento sin gravamen, del beneficiario, **requiere requisitos y solemnidades que protejan al transferente contra sus desordenados impulsos, a su cónyuge, herederos y acreedores contra las lesiones de los derechos que el régimen económico familiar, la ley sucesoria o el principio patrimonial le confieren, y al donatario contra los riesgos de una adquisición en apariencia precaria o por lo menos desprovista de las defensas que las obligaciones recíprocas y los actos formales ponen en juego**, habiendo de hacerse para que sea válida la donación de cosa inmueble, a tenor del art. 633 del Código Civil, en escritura pública, con expresión de los bienes donados y el valor de las cargas que deba satisfacer el donatario, pudiendo formalizarse la aceptación en la misma escritura u otra separada, y aunque con tales preceptos no se cierra el paso de toda donación que pretenda llevarse a cabo en un instrumento público de compraventa, los intereses más arriba mencionados no quedan a salvo, si los elementos jurídicos que integran el acto disimulado y en especial el elemento de voluntades sobre gratuitidad, alcance y condiciones de la transferencia, no son puestos de relieve de una manera indiscutible y auténtica". (Énfasis suplido) Hernández Usera v. Srio. De Hacienda, 86 D.P.R. 13, 23 (1962), (citando la sentencia dictada el 5 de noviembre de 1956 por el Tribunal Supremo de España).

Finalmente y pertinente a este caso, hemos establecido que la cuantía base para computar los derechos de arancel debe ser fija y reconocible, sin necesidad de ulterior determinación matemática. Al respecto, en Inspector de Protocolos v. Dubón, 107 D.P.R. 50 (1978), explicamos lo siguiente:

> La cuantía base para computar los derechos de arancel de un documento público notarial, sea escritura, acta o de cualquier otra índole, de no aparecer del propio documento, deberá tomarse de las constancias, diligencias y anejos que se unen al original permaneciendo en el protocolo y que reflejen el valor envuelto en el acto o negocio jurídico objeto del otorgamiento. Id., en las págs. 64-65.

### III

En este caso, el señor Felipe Rosario vendió, cedió y transfirió a la señora González Machado todos sus derechos sobre un bien inmueble sito en Puerto Rico, a través de un contrato privado titulado "Contrato de Venta Bajo Firma Privada", por el precio aproximado de seis dólares. Del precio de este alegado contrato de compraventa se desprende que el verdadero negocio jurídico llevado a cabo entre las partes fue una donación onerosa disimulada, ya que la señora González Machado asumió el gravamen sobre el verdadero valor de lo donado, en este caso, la hipoteca a favor del Banco Popular.

Luego de haberse protocolizado el contrato por un notario en Puerto Rico a través de la Escritura Núm. 53, el Banco Popular lo presentó al Registro de la Propiedad para su inscripción, alegando que el documento cumple con

los requisitos del artículo 46 de la Ley Hipotecaria, supra. No tiene razón. La Escritura Núm. 53 no satisface el tercer requisito de dicho artículo, ya que no cumple con las formas y solemnidades de la República Dominicana ni las de Puerto Rico.

Según las formalidades exigidas en la República Dominicana la donación del bien inmueble contenida en el documento en controversia debió ser otorgada en forma auténtica y no en escritura bajo firma privada. Por esto, el "Contrato de Venta Bajo Firma Privada" no cumplió con las formas y solemnidades de la República Dominicana. Prueba de esto es que el notario sólo dio fe de la autenticidad de las firmas de los otorgantes. En específico el notario expresó:

> Yo: LICDO. Nicanor Guillermo Ortega, Abogado y Notario Publico de los del Numero del Distrito Nacional, CERTIFICO Y DOY FE, que las firmas que anteceden fueron puestas en mi presencia libre y voluntariamente por los señores MIRIAM GONZALEZ MACHADO Y LICDO. JESUS MARIA FELIPE ROSARIO, de generales que constan, quienes me han declarado bajo la fe del juramento, que esas son las mismas con las cuales acostumbran firmar todos los actos de sus vidas en los cuales son partes. En Santo Domingo, Distrito Nacional, Capital de la República Dominicana, a los diecinueve (19) días del mes de noviembre del año mil novecientos noventa y ocho (1998).

De igual forma, el documento presentado ante el Registro no cumplió con las formas y solemnidades de Puerto Rico, ya que no fue otorgado en escritura pública y no expresa las cargas que la donataria asumió, según lo requieren las formas *ad solemnitatem* de las donaciones de bienes inmuebles en nuestra jurisdicción.

Debido a que hemos establecido que la Escritura Núm. 53 no cumple con el tercer requisito del artículo 46 de la Ley Hipotecaria, no es necesario referirnos a los demás requisitos de dicho artículo.

Finalmente, según lo requiere nuestro ordenamiento, la Escritura Núm. 53 debió contener la cuantía base para computar los derechos de arancel de forma tal que no fuera necesario ulterior determinación matemática, o sea, que no fuera necesario calcular su equivalencia en dólares.

Por los fundamentos antes expuestos se confirma la denegatoria del Registrador.

Se dictará sentencia de conformidad.


                        Liana Fiol Matta
                        Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Popular de Puerto Rico
        Recurrente

                              RG-2006-2      Recurso
                                             Gubernativo

        v.


Registrador de la Propiedad,
Sección de Aguadilla;
Hon. Frank Quiñones Vigo
        Recurrido




SENTENCIA


En San Juan, Puerto Rico, a 30 de octubre de 2007.

    Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte integrante de la presente Sentencia, se confirma la denegatoria del Registrador.

    Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal. El Juez Asociado señor Fuster Berlingeri no intervino.



                        Aida Ileana Oquendo Graulau
                        Secretaria del Tribunal Supremo